IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Obermiller Nelson Engineering, Inc., a North Dakota corporation, | Court File No.: 21-cv-463 (JRT/TNL) |
| Petitioner, | |
| vs. | **OBERMILLER NELSON ENGINEERING, INC.'S MEMORANDUM OF LAW IN SUPPORT OF PETITION / MOTION FOR ORDER DISMISSING AND/OR STAYING RESPONDENT RIVER TOWERS ASSOCIATION'S DEMAND FOR ARBITRATION** |
| River Towers Association, a Minnesota Nonprofit corporation, and Langston Pearson Enterprises, Inc. d/b/a Hayes Automation, a Minnesota Corporation | |
| Respondents. | |

## INTRODUCTION

By written subcontract, Petitioner Obermiller Nelson Engineering, Inc. ("ONE") provided certain mechanical and electrical engineering services to Respondent Langston Pearson Enterprises, Inc. d/b/a Hayes Automation ("Hayes") in connection with Hayes' design-build prime contract with Respondent River Towers Association ("Association") for HVAC upgrades to the Association's residential buildings. The Association subsequently commenced arbitration proceedings against ONE asserting claims for breach of contract and professional negligence. ONE initiated this action challenging the arbitrability of the Association's arbitration claims against ONE.

ONE now brings this motion seeking an Order from this Court dismissing or staying the Association's Demand for Arbitration ("Demand") (Doc. 1-1) against ONE because there is no arbitration agreement between ONE and the Association and (2) the Association's arbitration claims against ONE are not within the scope of the arbitration

clause within ONE's subcontract with Hayes.  In addition, as established below, the statute of limitations under Minn. Stat. § 541.051 bars the Association's claims predicated on an "existing stainless steel boiler flue piping" condition undisputedly accepted by the Association in the Prime Contract.

## ISSUES

I.    **WHETHER THE ASSOCIATION'S ARBITRATION CLAIMS AGAINST ONE SHOULD BE DISMISSED OR STAYED.**

     **Answer:  Yes.**
     The Association's arbitration claims against ONE are not arbitrable.  The claims should be dismissed with prejudice and on the merits, or in the alternative, stayed, pending the Court's final review of arbitrability.

II    **IF THE ASSOCIATION MAY PROCEED ON ITS CLAIMS, WHETHER THE CLAIMS PREDICATED ON AN "EXISTING STAINLESS STEEL BOILER FLUE PIPING" CONDITION IS BARRED BY THE STATUTE OF LIMITATIONS.**

     **Answer:  Yes.**
     Minnesota statutes, section 541.051 bars the Association's claims based on the "existing stainless steel boiler flue piping" condition because the Association accepted this condition in its Prime Contract, and any claims based thereon have expired.

## DOCUMENTS RELIED UPON

ONE relies upon the Petition and documents incorporated therein (Docs. 1, 1-1). ONE further relies upon a November 5, 2020, letter from Questions & Solutions Engineering, Inc. ("QSE") to the Association's lawyer which the Association expressly incorporated into the Demand.  *See* O'Meara Decl., ¶2, at Ex. 1 (QSE Letter); Demand (Doc. 1-1), at ECF p. 6, ¶12.  ONE further submits its Answer and Joinder Request filed in the arbitration matter.  O'Meara Decl., ¶¶3, 4, at Exs. 2-3.

2

When deciding a Rule 12(b)(6) motion to dismiss, a court may consider the complaint and exhibits attached thereto, applicable contracts, matters of public record, orders, and materials embraced by the complaint. *Porous Media v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999); *Stahl v. U.S.D.A.*, 327 F.3d 697, 700 (8th Cir. 2003); *Mattes v. ABC Plastics,* 323 F.3d 695, 697 n.4 (8th Cir. 2003).

## FACTS

### A.     The Contractual Relationships

The Association contracted with Hayes through a February 13, 2018, AIA 141 Standard Form of Agreement Between Owner and Design-Builder ("Prime Contract") for the River Towers HVAC Revitalization Project ("Project").  *See* Prime Contract (Doc. 1-1), at ECF p. 18.  The Association, as the Owner of the Project, agreed to pay Hayes $4,930,000 as the contract sum under the Prime Contract.  *Id.* at ECF p. 20, § 1.1.6.  The Project is the subject of the Association's Demand.  *See generally* Demand (Doc. 1-1), at ECF pp. 3-8.

ONE is a North Dakota mechanical and electrical engineering firm which subcontracted under Hayes pursuant to a March 15, 2018, Hayes Automation Subcontract Agreement ("Subcontract").  *See* Petition (Doc 1), at ¶2; Subcontract (Doc. 1-1), at ECF, p. 74.  The scope of ONE's professional services for the Project is defined in ONE's January 11, 2018, Letter of Agreement, attached at Schedule A to the Subcontract.  *Id.*, at 83-84.  Hayes agreed to pay ONE $265,500 for its professional services under the Subcontract.  (Doc. 1-1) at ECF pp. 74, 83-84.

The Association expressly agreed, in its Prime Contract with Hayes, that ONE's

services are performed solely for Hayes, not the Association:

> When applicable law requires that services be performed by licensed professionals, [Hayes] shall provide those services through qualified, licensed professionals.  The [Association] understands and agrees that the services of [Hayes'] Architect and [Hayes'] other consultants are performed the sole interest of, and for the exclusive benefit of, [Hayes].

Prime Contract (Doc. 1-1) at ECF p. 25, §3.1.6.[1]  The Subcontract between Hayes and ONE also expressly states ONE's contractual obligations are provided toward Hayes, including any obligations flowing from the Prime Contract.  *See* Subcontract (Doc. 1-1) at ECF p. 78 (Responsibilities of Subcontractor).

The Subcontract further requires that "any dispute between Hayes and [ONE] arising out of or relating to this [Subcontract] or the Work shall be resolved by litigation." *Id*. at ECF p. 81 (Applicable Law). This broad litigation provision is subject to a joinder request *by Hayes* (*not* the Association) for "any arbitration proceeding or legal action *between Owner and Hayes* for any act or omission of Subcontractor or any Work required to be performed hereunder by Subcontractor."  *Id*.  There is no arbitration clause or agreement that allows the Association to assert direct claims against ONE. The Association is not Hayes, nor are the Association's claims against ONE "between Owner and Hayes" as required for an arbitration joinder under the Subcontract.  *Id*.

ONE and the Association are not parties to a contract and there is no arbitration

---

[1]       ONE is a "Consultant" as defined in the Prime Contract.  *See* Prime Contract (Doc. 1-1), at ECF p. 23, §1.4.9 (Consultant is "a person or entity providing professional services for the Design-Builder for all or a portion of the Work [].  To the extent required by the relevant jurisdiction, the Consultant shall be lawfully licensed to provide the required professional services.")

agreement between them.[2]

Additional facts will be noted below as applicable.

**B.**   **The Arbitration Proceedings**

The Association initiated the arbitration by its Demand, dated February 8, 2021. The Demand asserts eight (8) claims in the Demand for Arbitration.  The first six (6) claims are "between [the Association] and Hayes" — negligence, breach of contract, breach of express/implied warranties, breach of fiduciary duty, indemnification, theft of proceeds, and slander of title.  *See* Demand (Doc. 1-1), at ECF pp. 8-13.  Hayes answered the Demand, cross-claimed against ONE and requested joinder of ONE to the extent Hayes is found liable for these claims.  *See* Doc. 1-2.  The Association asserted the last two claims (the Seventh and Eighth Causes of Action) directly against ONE.  *See* Demand (Doc. 1-1), at ECF pp. 14-16.  In response, ONE filed its Petition in this Court (Doc. 1).  To protect its rights in the arbitration proceeding, ONE also filed its answering statement, answer to cross-claim, cross-claim conditioned on this Court's determination of arbitrability.  O'Meara Decl., ¶3, Ex. 2.

Despite the lack of an arbitration agreement between them, or any contractual relationship at all, the Association asserts arbitration claims directly against ONE seeking in excess of $6 million for design and construction-related damages.  *See* Demand (Doc. 1-1), at ECF p. 16 (Request for Relief, ¶1).

---

[2]    In contrast, there is an arbitration agreement between the Association and Hayes, and those parties have agreed that the Federal Arbitration Act governs arbitration proceedings between them.  *See* Prime Contract (Doc. 1-1), at ECF pp. 22-23, 49-50, §§ 1.3, 14.4.1, 15.1.  As explained above, however, ONE is not subject to that agreement.

<u>**ARGUMENT**</u>

**I.   <u>STANDARD OF ANALYSIS</u>**

    **1.   <u>Rule 12(b)(6) Motions</u>**

A Rule 12(b)(6) motion is the appropriate means to resolve the instant issues.  *See*

*Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018).  This Court recently explained the

application of Rule 12(b)(6) motions:

> In reviewing a motion to dismiss under Rule of Civil Procedure 12(b)(6), the
> Court considers all facts alleged in the complaint as true to determine if the
> complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-
> Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556
> U.S. 662, 678 (2009)). To survive a motion to dismiss, a complaint must provide
> more than " 'labels and conclusions' or 'a formulaic recitation of the elements of a
> cause of action[.]' " *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*,
> 550 U.S. 544, 555 (2007)). Although the Court accepts the complaint's factual
> allegations as true, it is "not bound to accept as true a legal conclusion couched as
> a factual allegation." *Twombly*, 550 U.S. at 555 (quotation omitted). "A claim has
> facial plausibility when the plaintiff pleads factual content that allows the court to
> draw the reasonable inference that the defendant is liable for the misconduct
> alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely
> consistent with a defendant's liability, it stops short of the line between possibility
> and plausibility," and therefore must be dismissed. *Id.* (quotation omitted). The
> Court construes the complaint in the light most favorable to the plaintiff, *Papasan
> v. Allain*, 478 U.S. 265, 283 (1986), and draws all reasonable inferences in
> plaintiff's favor, *Park Irmat Drug Corp v. Express Scripts Holding Co.*, 911 F.3d
> 505, 512 (8th Cir. 2018).

*McDougall v. CRC Industries,* 2021 WL 810625, *3 (D. Minn. March 3, 2021)

(Tunheim, C.J.).

    **2.   <u>Arbitrability</u>**

The Association's direct claims against ONE must be dismissed or alternatively

stayed pending the determination of the Association's claims against Hayes.  ONE never

entered into a contract with the Association and there is no arbitration agreement between

them.[3]  Neither is the Association a third party beneficiary of the Subcontract.  As well, the Association's claims against ONE are not within the scope of the arbitration provision in ONE's Subcontract with Hayes.  The Association's claims are not arbitrable, and ONE is forced to initiate this action seeking a judicial determination of arbitrability.

"The question of arbitrability is for the court, not the arbitrator." *AgGrow Oils v. Nat'l Union Fire Ins.*, 242 F.3d 777, 780 (8th Cir. 2001); *First Options of Chicago v. Kaplan*, 514 U.S. 938, 942-44, (1995) ("a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute"); *Liberty Mut. v. Mandaree Pub503*, F.3d 709, 711 (8th Cir. 2007) ("a federal court has jurisdiction to determine whether a question of arbitrability must be decided by the court or by the arbitrator."); *ATT v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."); *New Prime v. Oliveira* 139 S. Ct. 532, 538 (2019) (courts are the appropriate arbiters when "a party specifically challenges the validity of the agreement to arbitrate"); *Henry Schein v. Archer & White Sales*, 139 S. Ct. 524, 529 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."); *Rent-A-Center v. Jackson*, 561

---

[3]     The Court's determination there is no valid arbitration agreement means there is no binding arbitration clause delegating an arbitrability determination to the arbitrator.  *See Shockley v. PrimeLending,* 929 F.3d 1012, 1019 (8th Cir. 2019) ("[w]ithout an acceptance, no contract was formed as to the delegation provision"); *Adherent Labs. v. Dipietro*  unpubl., 2018 WL 3520843, *3 (Minn. Ct. App. Jul. 23, 2018) (agreeing "before the AAA rules can be invoked, the district court must decide whether appellants even have a right to enforce the settlement agreement"; finding no third-party beneficiary to compel arbitration despite contract stating "Arbitration shall be under the rules of the American Arbitration Association").

U.S. 63, 71 (2010) ("If a party challenges the validity ... of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement...."); *Granite Rock v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) ("[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute."); *Marshall v. Green Giant*, 942 F.2d 539, 547 (8th Cir. 1991) ("The district court was obligated to determine whether the arbitration agreement was enforceable."); *Schoenborn v. State Farm*, 495 N.W.2d 460, 463 (Minn.App. 1993); *Cmty. Partners  v. City of Lonsdale*, 697 N.W.2d 629, 632 (Minn. App. 2005).

There are two gateway substantive questions of "arbitrability" for courts to decide: "[1] whether a valid agreement to arbitrate exists between the parties and [2] whether the specific dispute falls within the scope of that agreement." *Express Scripts v. Aegon*, 516 F.3d 695, 699, 700 (8th Cir. 2008); *Webster Grading v. Granite Re*, 879 F. Supp. 2d 1013, 1018 (D. Minn. 2012); *Chiafos v. Restaurant Depot* 2009 WL 2778077, at *3 (D. Minn. Aug. 28, 2009) (Montgomery, J.); *Amdahl v. Green Giant*, 497 N.W.2d 319, 322 (Minn. App. 1993). *Atcas v. Credit Clearing*, 197 N.W.2d 448, 452 (1972) ("If no agreement to arbitrate exists, either in fact or because the controversy sought to be arbitrated is not within the scope of the arbitration clause of the contract, the court may interfere and protect a party from being compelled to arbitrate."); *Shockley v. PrimeLending*, 929 F.3d 1012, 1019 (8th Cir. 2019) ("[w]ithout an acceptance, no contract was formed as to the delegation provision"); *Flink v. Carlson* 856 F.2d 44, 47 (8th Cir. 1988) (staying arbitration of claims by brokerage firm against non-signatory

8

individual representative to agreement) (citing *Del E. Webb Constr. v. Richardson Hospital*, 823 F.2d 145, 148 (5th Cir. 1987) (although contractor and architect both agreed to arbitrate disputes with owner, court could not force architect to arbitrate its third-party claim against contractor); *Barker v. Golf U.S.A.,* 154 F.3d 788, 791 (8th Cir. 1998), *cert. denied* 525 U.S. 1068 (1999); *I.S. Joseph v. Mich. Sugar*, 803 F.2d 396, 399-400 (8th Cir. 1986) ("If there is in fact a dispute as to whether an agreement to arbitrate exists, then that issue must first be determined by the court as a prerequisite to the arbitrator's taking jurisdiction"); *N & D Fashions v. DHJ Indus.*, 548 F.2d 722, 729 (8th Cir. 1976); *Local 1119 v. Mesabi*, 463 N.W.2d 290, 295 (Minn. App. 1990); *ISD No. 775 v. Holm Bros. Plumbing*, 660 N.W.2d 146, 149 (Minn. Ct. App. 2003) ("In actions to stay arbitration, the limited issue presented to the court is the existence and scope of the arbitration agreement."); *Minnesota TP v. Co. St. Louis*, 611 N.W.2d 355, 359 (Minn. Ct. App. 2000) ("But even if the bare existence of an agreement to arbitrate clearly exists, the district court may still decide whether the particular dispute at issue was clearly outside the scope of the clause.");[4] *see also* Minn. Stat. § 572.09(b) ("On application, the court

---

[4]      *Esanbock v. Weyerhauser*, 367 F.Supp.3d 925, 934-35 (D.Minn. 2019) (Nelson, J.), appeal dismissed (Sept. 3, 2019) (pre-closing claims not subject to arbitration in purchase agreement; "the FAA's presumptions favoring arbitration do not compel this Court to order arbitration of disputes that are clearly not within the scope of an arbitration provision."); *Glacier Park Iron Ore v. U.S. Steel,* 948 N.W.2d 686, 690-91 (Minn. Ct. App. 2020), rev. granted (Oct. 20, 2020) ("The FAA provides that a court decides whether a claim is arbitrable."); *Michels Holdings v. Prof'l Drain Servs.,* 2014 WL 3631678, at *3 (D. Minn. Jul. 22, 2014) (Davis, C.J.) (Minnesota Uniform Arbitration Act, Minn. Stat. § 572B.07, applies because subcontract specifies laws of State of Minnesota and 572B apply); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 1651 (1991); *Volt v. Bd. of Tr.*, 489 U.S. 468, 478 (1989) (FAA does not require parties to arbitrate "when they have not agreed to do so."); *Owen v.*

may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate.").

### 2. **Minnesota State Law Governs Arbitrability**

In analyzing the two-step inquiry, the Court applies "ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter." *Keymer v. Management Recruiters*, 169 F.3d 501, 504 (8th Cir. 1999); *Liberty Mut.  v. Mandaree*, 503 F.3d 709, 711 (8th Cir. 2007); *Lyster v. Ryan's Family Steak House.*, 239 F.3d 943, 946 (8th Cir. 2001); *Paine v. Jefferson Nat'l Life*, 594 F.3d 989, 992 (8th Cir. 2010); *Bam Navigation v. Wells Fargo,* 2021 WL 533692 *3, 5 (D. Minn. Feb. 12, 2021) (Brasel, J.) ("State contract law is used to determine whether a nonsignatory may enforce an arbitration agreement.") In addition, the Subcontract mandates, "The terms and conditions of this Contract shall be construed in accordance with the laws of the state in which the Project is located."  Doc. 1-1, at ECF p. 81 (Applicable Law).  *See also Dominium Austin Partners v. Emerson*, 248 F.3d 720, 729 n.9 (8th Cir. 2001) (The construction of an agreement to arbitrate is governed by Federal Arbitration Act unless the agreement expressly provides that state law should govern.); *State v. Cross Country Bank,* 703 N.W.2d 562 (Minn. App. 2005) ("The FAA only applies when there is an

---

*Bristol Care,* 702 F.3d 1050, 1052 (8th Cir. 2013) (FAA "requires courts to enforce arbitration agreements according to their terms."); *NRM Corp. v. Hercules,* 758 F.2d 676, 681 (D.C. Cir. 1985) (contract interpretation, under federal law, "dovetails precisely with general principles of contract law," such that, under both, "the judicial task in construing a contract is to give effect to the mutual intentions of the parties").

agreement to arbitrate.")[5]

"Minnesota follows the objective theory of contract formation, under which an outward manifestation of assent is determinative, rather than a party's subjective intent." *Asia Pacific v. Rainforest Café*, 380 F.3d 383, 385 (8th Cir. 2004); *Cloquet Educ. Ass'n v. ISD* No. 94, 344 N.W.2d 416, 418 (Minn. 1984) (arbitration agreement itself reveals the intention of the parties); *In re Hennepin Recycling Lit.*, 540 N.W.2d 494, 499 (Minn. 1995) ("The rights of third-party beneficiaries depend upon, and are measured by, the terms of the contract."); *Cederstrand v. Lutheran Bhd.*, 117 N.W.2d 213, 221 (Minn. 1962).  In discerning the parties' intent the Court must do so strictly from the four corners of the agreement, giving effect to all terms of the contract and eschewing an interpretation that is unreasonable, absurd or renders portions of the contract superfluous or redundant. *See Quade v. Secura*, 814 N.W.2d 703, 705 (Minn. 2012); *Current Tech. Concepts v. Irie Enterprises*, 530 N.W.2d 539, 543 (Minn. 1995).

---

[5]     *See also Vaden v. Discover Bank,* 556 U.S. 49, 59, (2009) (FAA "is 'something of an anomaly' in the realm of federal legislation: It 'bestow[s] no federal jurisdiction but rather requir[es] [for access to a federal forum] an independent jurisdictional basis over the parties' dispute."); *E.E.O.C. v. Waffle House*, 534 U.S. 279, 293 (2002) (FAA does not require parties to arbitrate or be bound by an arbitration where the party has not agreed to be bound by arbitration.)  Here, ONE has invoked the Court's diversity jurisdiction.

II.   **THIS COURT MUST DISMISS THE ASSOCIATION'S ARBITRATION CLAIMS AGAINST ONE BECAUSE THERE IS NO VALID CONTRACT OR ARBITRATION AGREEMENT BETWEEN THE ASSOCIATION AND ONE**

1.   <u>**There is no Contract or Agreement to Arbitrate Between the Association and ONE**</u>

There is no written contract between the Association and ONE. The Association contracted only with Hayes, the design-builder, under the Prime Contract.  ONE contracted with Hayes under the Subcontract. There being no arbitration agreement between the Association and ONE, the Court can determine as a matter of law that the Association's arbitration claims against ONE must be dismissed.  *See e.g., State v. Cross Country Bank*, 703 N.W.2d 562, 571 (Minn. App. 2005) (applying "long-standing contract-law principles" to hold "FAA policy favoring arbitration of disputes does not compel [non-party] to arbitrate its tort claim"); *Prestressed Concrete v. Adolfson Peterson.*, 240 N.W.2d 551, 552-53 (1976) (two parties in a multiparty suit, who were not agents but separate corporations, could not be compelled to arbitrate their claims); *Dental Implants & Biomaterials v. Keystone Dental,* 2012 WL 12896195, at *3 (D. Minn. July 3, 2012) (Magnuson, J.) ("[A defendant] could not, for example, institute arbitration against a company with whom it never had a contract at all and then insist that only an arbitrator could decide that there was no contract between the two parties. That result not only defies logic but is contrary to the longstanding maxim that parties are bound by the terms of what they agreed."); *Bam Navigation, LLC v. Wells Fargo & Co.,* 2021 WL 533692 *3, 5 (D. Minn. Feb. 12, 2021) (Brasel, J.) ("Before addressing the issue of whether this dispute is within the scope of the arbitration agreement, the Court must determine which

parties may enforce the agreement." "It is a 'foundational Federal Arbitration Act principle' that 'arbitration is strictly a matter of consent"—the parties must have agreed to arbitrate.") (citing *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019); *Davies v. Waterstone Capital*, 856 N.W.2d 711, 716 (Minn. Ct. App. 2015) (enforcing statute of limitation as "a challenge to the validity of the arbitration agreement, which is an issue for the court to decide."); *Shockley v. PrimeLending*, 929 F.3d 1012 (8th Cir. 2019) (court properly determined parties did not agree to arbitrate any disputes between them nor was a contract formed to delegate this decision to an arbitrator); *Nebraska Machinery v. Cargotec,* 762 F.3d 737, 741 (8th Cir. 2014) (court decides threshold question whether the arbitration agreement itself is valid despite incorporation of AAA rules); *Schultz v. Verizon Wireless*, 833 F.3d 975, 980 (8th Cir. 2016) (court had jurisdiction because contract did not provide that an arbitrator must decide arbitrability); *Faber v. Menard,* 367 F.3d 1048, 1052–54 (8th Cir. 2004) (reviewing as issue of contract validity argument that fee-splitting requirement in arbitration provision was unconscionable); *Alexander v. Anthony Int'l*, 341 F.3d 256, 264 (3d Cir. 2003) (court decides unconscionability of 30–day limitations period); *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873 (8th Cir. 2018) ("[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants" (brackets in original)); *Theroff v. Dollar Tree Stores, Inc.,* 591 S.W.3d 432, 442 (Mo. 2020) ("A court should determine if the contract in question falls within the coverage of the arbitration act before applying the act's severability principle, requiring a challenge to an arbitration agreement, or delegation provision, separate from a challenge to the overall contract.") (citing *New*

*Prime Inc*., 139 S. Ct. at 538) ("before invoking the severability principle, a court should 'determine [ ] that the contract in question is within the coverage of the Arbitration Act.")[6]

### 2.    The Association is not a Third-Party Beneficiary of the Subcontract

Having no contract with ONE, the Association alleges it is a third party beneficiary of the Subcontract between Hayes and ONE in an attempt to enforce its direct claims against ONE. *See* Demand (Doc. 1-1) at 12 ("Seventh Cause of Action: Breach of Contract – Third-Party Beneficiary"). "Whether a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory is a threshold question of arbitrability." *Eckert/Wordell Architects, Inc. v. FJM Props*, 756 F.3d 1098, 1100 (8th Cir. 2014); *Adherent Labs., Inc. v. Dipietro* unpubl., 2018 WL 3520843, *3 (Minn. Ct.

---

[6] *See also Haworth v. New Prime,* 448 F. Supp. 3d 1060, 1073 (W.D. Mo. 2020) ("the Court must decide whether there is "mutual assent" to create an arbitration contract before even threshold questions of arbitrability can be compelled to an arbitrator"); *Sleeper Farms v. Agway,* 211 F.Supp.2d 197, 200 (D.Me.2002) ("The existence of an agreement to arbitrate is paramount.... Once the existence of an agreement is established, courts turn to the question of the 'scope' of the arbitration agreement, unless the parties have 'clearly and unmistakably' delegated the issue of 'scope' to an arbitrator.") *aff'd*, 506 F.3d 98 (1st Cir. 2007); *Sphere Drake v. All Am. Ins.,* 256 F.3d 587, 591 (7th Cir. 2001) ("as arbitration depends on a valid contract an argument that the contract does not exist can't logically be resolved by the arbitrator"); *China Minmetals v. Chi Mei Corp*., 334 F.3d 274, 288 (3d Cir.2003) ("a contract cannot give an arbitral body any power, much less the power to determine its own jurisdiction, if the parties never entered into it"); *Chastain v. Robinson-Humphrey*, 957 F.2d 851, 854 (11th Cir. 1992) (court must first determine whether non-signatory to arbitration agreement is bound to arbitrate because "that party is challenging the very existence of any agreement, including the existence of an agreement to arbitrate ") abr'd on other grounds by *Larsen v. Citibank FSB* , 871 F.3d 1295, 1303 n.1 (11th Cir. 2017); *John Wiley & Sons v. Livingston,* 376 U.S. at 546 ("the threshold issue of whether a nonsignatory is bound by an arbitration clause is for the court, not the arbitrators").

App. Jul. 23, 2018) (agreeing "before the AAA rules can be invoked, the district court must decide whether appellants even have a right to enforce the settlement agreement"; finding no third-party beneficiary to compel arbitration despite contract stating "Arbitration shall be under the rules of the American Arbitration Association"); *Onvoy, Inc. v. SHAL*, 669 N.W.2d 344, 356 (Minn. 2003) ("parties may not be compelled to arbitrate claims if they have alleged that the contract at issue never legally existed"); *Stern 1011 First St. v. Kenneth* 937 N.W.2d 173, 177 (Minn. Ct. App. 2020) (affirming district court's ruling that plaintiff waived its arbitration rights).

Under Minnesota law, to be a third-party beneficiary, the contracting parties must intend their contract to benefit that third party at the time the contract was entered. *Hickman v. SAFECO,* 695 N.W.2d 365, 370 (Minn. 2005); *In re Hennepin Recycling*, 540 N.W.2d at 499 ("The rights of third-party beneficiaries depend upon, and are measured by, the terms of the contract."); *Broughton v Hold Bros*. 2002 WL 1840853 (D. Minn. Aug. 12, 2002); *Robbinsdale Public SCH v. Haymaker Constr.*, unpubl., 1997 WL 631521, *3 (Minn. Ct. App. Oct. 14, 1997) ("When evaluating the issue of arbitrability on a motion to stay arbitration, the court must ascertain the intention of the parties from the language of the arbitration agreement.") (citing *Minnesota Fed. of Teachers, Local 331 v. ISD 361*, 310 N.W.2d 482, 484 (Minn. 1981)).

The Association is a signatory to its Prime Contract with Hayes. (Doc. 1-1) at 18. The clear and unambiguous terms of the Prime Contract are dispositive of the contracting parties' intent rejecting any third party beneficiary status:

§ **1.4.1 Design-Build Documents.** The Design-Build Documents consist of this

Agreement between Owner and Design-Builder and its attached Exhibits (hereinafter, the "Agreement"); other documents listed in this Agreement; and Modifications issued after execution of this Agreement. A Modification is (1) a written amendment to the Contract signed by both parties, including the Design-Build Amendment, (2) a Change Order, or (3) a Change Directive.

§ **1.4.2 The Contract.** The Design-Build Documents form the Contract. The Contract represents the entire and integrated agreement between the parties and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. **The Design-Build Documents shall not be construed to create a contractual relationship of any kind between any persons or entities other than the Owner and the Design-Builder.**

§ **3.1.4** The Design-Builder shall be responsible to the Owner for acts and omissions of the Design-Builder's employees, Architect, Consultants, Contractors, and their agents and employees, and other persons or entities performing portions of the Work.

§ **3.1.6** When applicable law requires that services be performed by licensed professionals, the Design-Builder shall provide those services through qualified, licensed professionals. **The Owner understands and agrees that the services of the Design-Builder's Architect and the Design-Builder's other Consultants are performed in the sole interest of, and for the exclusive benefit of, the Design-Builder.**

Prime Contract (Doc. 1-1) at ECF pp. 23, 25 (emphasis added). The Association, in its

Prime Contract, expressly acknowledges and agrees that ONE's services "are performed

in the sole interest of, and for the exclusive benefit of, the Design-Builder," and that the

Prime Contract "shall not be construed to create a contractual relationship of any kind

between any persons or entities other than the Owner and the Design-Builder." *Id*.

Under these terms, there can be no third party beneficiaries.

Despite these clear contractual statements, the Association contends the Prime

Contract provisions apply to mandate arbitration of its direct claims against ONE.  The

Association is wrong, as the terms of the Prime Contract preclude any contractual

relationship between the Association and ONE.  The Subcontract, moreover, states  that ONE only assumes *toward Hayes* — not the Association —  all of the obligations and responsibilities Hayes assumes toward the Association under the Prime Contract. Subcontract (Doc. 1-1) at ECF p. 81.  ONE's services "performed in the sole interest of, and for the exclusive benefit of" Hayes under the Subcontract were actually intended for the Association when the Prime Contract, as noted above, clearly states ONE's services were solely for the benefit of Hayes.  *See ISD 281 v. Haymaker,* unpubl., 1997 WL 631521, *3 (Minn.Ct.App. Oct. 14, 1997) (finding AIA 'no contractual relationship' clause "specifically excludes the possibility of a contract between the [owner] and any subcontractor"); *Fliginger v. Opus Northwest Constr.*, unpubl., 2010 WL 4286231, *6 (Minn.Ct.App. Nov. 2, 2010) (no third party beneficiary where design-build contract "clearly envisions that [design-builder's] performance will be rendered to [Owner]).."); *Town Ctr. Office Plaza  v. Carlson Real Estate,* unpub., 2017 WL 1375304, at *8-9 (Minn.Ct.App. Apr. 17, 2017) (condominium association was not a third-party beneficiary of  design-build contract between developer and builder); *Eleria v. City of St. Paul*, unpubl., 2010 WL 5293742, at *6-7 (Minn.Ct.App. Dec. 28, 2010) (no intended third party beneficiary under contract's "sole and exclusive benefit" provision).[7] *See also*

---

[7]      *See also Bedford Courts v. Concrete Structures*, 68 Misc. 3d 1224(A), 2020 WL 5638618 (N.Y. Sup. Ct. 2020) ("no contractual relationship" clause is evidence of the contracting parties' intent not to create any third party beneficiaries); *Pierce Associates v. Nemours Foundation*, 865 F.2d 530, 537 (3d Cir. 1988) ("the owner is the one who ultimately benefits from its performance. However, this does not create a third party beneficiary relationship."); *Dick Anderson Constr. v. Monroe Constr.,* 221 P.3d 675, 686 (Mont. 2009); *Yaffe v. Scarlett Place Residential*, 45 A.3d 844, 852 (Md.Ct. Spec. App. 2012) ("no contractual relationship" clause evidence that contracting parties

*Cloquet Educ. Ass'n v. ISD 94*, 344 N.W.2d 416, 418 (Minn. 1984) (parties' intent is found in the contract); *Keymer*, 169 F.3d at 504 ("arbitration is a matter of consent, not of coercion."); *Chard Realty v. City of Shakopee*, 392 N.W.2d 716, 720-21 (Minn. App. 1986), *rev. denied* (Minn. Nov. 19, 1986); *Julian Johnson Constr. v. Parranto*, 352 N.W.2d 808, 811 (Minn.App. 1984) (parties must intend to benefit third party at the time they entered their contract through contractual performance); *St. Paul Fire Marine v. API*, unpubl., 2004 WL 2161181 (Minn.Ct.App. Sep. 28, 2004) (affirming court's denial of non-signatory's motion to compel arbitration claiming third-party beneficiary status); *Oehme van Sweden v. Maypaul Trading*, 902 F. Supp. 2d 87, 96-97 (D.D.C. 2012) (court determined non-signatory not bound to arbitrate because she did not sign any agreement containing an arbitration provision and thus did not clearly and unmistakably agreed to arbitrate arbitrability); *U.S. v. Interface Constr.*, 2007 WL 9725001, at *3 (E.D. Mo. Nov. 20, 2007) ("A mere reference to the prime contractor in a "flow-through" clause in the subcontract is insufficient to bind a subcontractor to an arbitration clause contained within the prime contract.") (citing *Case Intern. v. T.L. James.,* 907 F.2d 65, 67 (8th Cir. 1990) (denying motion to compel arbitration)).

The Association is not a third party beneficiary of the Subcontract, and may not invoke the arbitration provision of the Subcontract.

### 3.   <u>The Scope of the Subcontract's Arbitration Clause Does not Apply to the Association's Claims Against ONE</u>

A further reason justifies dismissal:  the Association's direct claims against ONE

did not intend to confer third party beneficiary status on condominium unit owner to enforce contract between developer and contractor).

are not within the scope of the arbitration clause of the Subcontract. "The second issue, whether the specific dispute falls within the scope of [the] agreement,' must also be resolved by a court to ensure that a party is not unfairly stripped of its right to a judicial decision about a matter it had not agreed to arbitrate." *Express Scripts,* 516 F.3d at 699 (quoting *First Options of Chicago v. Kaplan*, 514 U.S. 938, 945 (1995)). The Court must determine the parties' intent "from the plain language of the instrument itself." *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004); *Knudsen v. Transp. Leasing/Contract*, 672 N.W.2d 221, 223 (Minn. App. 2003) (a court "gives effect to the parties' intentions as expressed in the four corners of the instrument, and clear, plain, and unambiguous terms are conclusive of that intent"), *rev. denied* (Minn. Feb. 25, 2004).

The Subcontract's claim resolution provisions provide:

**• APPLICABLE LAW**
The terms and conditions of this Contract shall be construed in accordance with the laws of the state in which the Project is located. **Subject to the obligation of Subcontractor to join in any arbitration proceeding or legal action between Owner and Hayes as set forth hereinabove, any dispute between Hayes and Subcontractor arising out of or relating to this Contract or the Work shall be resolved by litigation** commenced in a court of competent jurisdiction in the state in which the Project is located, if such litigation is initiated in or within six (6) months after the Project is fully completed, and in the state or province, or federal courts of the , if such litigation is initiated after such period, it being specifically understood and agreed that Hayes and Subcontractor expressly consent to the jurisdiction and venue of such courts.

**• RESPONSIBILITIES OF SUBCONTRACTOR**
• Insofar as the terms of the Prime Contract and/or the obligations and responsibilities which Hayes by the Prime Contract has assumed toward Owner are applicable to the Work, Subcontractor assumes toward Hayes all of the obligations and responsibilities which Hayes by the Prime Contract has assumed toward Owner and shall be bound to Hayes not only by the terms of this Contract but also by the terms of the Prime Contract. **To the extent that any arbitration**

**proceeding or legal action between Owner and Hayes involves any act or omission of Subcontractor or any Work required to be performed hereunder by Subcontractor, Subcontractor shall, if requested by Hayes, join in such arbitration proceeding or legal action as a party**, it being specifically understood and agreed that Subcontractor expressly consents to the jurisdiction an (sic) venue of, and agrees to be bound by any decision rendered in connection with, any such arbitration proceeding or legal action. Where any provision of the Prime Contract is inconsistent with a provision of this Contract, this Contract shall govern.

Subcontract (Doc. 1-1) at 78, 81 (emphasis added).

Under the Subcontract's express dispute resolution provisions *any dispute* between Hayes and ONE *arising out of or relating to the Subcontract or the Work shall be resolved by litigation.*[8] *Id.* at 81. The only exception is that *if requested by Hayes* ONE shall join an arbitration proceeding *between Owner and Hayes* that involves any act or omission of ONE or any Work required to be performed ONE. *Id.* This provision does not permit any direct claims against ONE by the Association, and by definition, the Association's direct claims against ONE are not "between Owner and Hayes" nor is Association's arbitration Demand a joinder request by Hayes. The Association's six claims against Hayes are the only claims "between Owner and Hayes" having any bearing on the Subcontract's limited arbitration provision.

Under the Subcontract, ONE assumed *toward Hayes* all of the obligations and

---

[8]    The Subcontract defines "Work" as: "The work specified in Schedule A including all permits, bonds, insurance, labor, services, supervision, scaffolding, tools and equipment necessary to fully perform and complete the construction required by this Contract and including all materials and supplies incorporated or to be incorporated in such construction." Subcontract (Doc. 1-1), at ECF p. 74 ("Work"). Schedule A of the Subcontract is ONE's January 11, 2018, Letter of Agreement addressed to Hayes and attached to the Subcontract proposing ONE's scope of mechanical and electrical services to Hayes. *Id.*, at ECF p. 82.

20

responsibilities that Hayes assumed toward the Association under the Prime Contract but only to the extent the arbitration claims *between the Association and Hayes* involve ONE's actions/omission or any Work required.  Subcontract (Doc.1-1) at ECF p. 81. The Subcontract governs over any inconsistent provisions in the Prime Contract.  *Id.* (Contract Documents) ("Where any provision of the Prime Contract is inconsistent with a provision of this Contract, this Contract shall govern.")  The result is that the Association may assert arbitration claims against Hayes, and if those claims involve ONE's conduct or its Work, Hayes may request ONE join the arbitration.  But nowhere does either the Prime Contract or the Subcontract permit the Association to assert direct arbitration claims against ONE.

In sum, the Association's direct claims against ONE are not permitted by the narrowly focused Subcontract provision to arbitrate only the claims "between Owner and Hayes" and are therefore not arbitrable against ONE.  *See e.g., M. A. Mortenson   v. Saunders Concrete Company*, 2011 WL 2672248, at *7 (D. Minn. Jul. 8, 2011) (Frank, J.) ("The arbitration agreement between Mortenson and Saunders, while incorporated in the Bond between Mortenson and Hartford, by its own terms only governs 'any dispute arising between Mortenson and [Saunders] under the [Subcontract].' The dispute between Mortenson and Hartford arising under the Bond is thus beyond the scope of the arbitration agreement."); *Local 38N Graphic Commc'ns Conference/IBT v. St. Louis Post-Dispatch, LLC,* 638 F.3d 824, 826 (8th Cir. 2011) ("The parties' obligation to pursue formal mediation arises solely under the subcontract; there is no similar provision in the Teaming Agreement. Therefore, this claim arises under the subcontract and is not subject

21

to arbitration."); *Flink v. Carlson*, 856 F.2d 44, 46-47 (8th Cir. 1988) (affirming district court's stay of arbitration of a brokerage's claims against the individual representative).

III.    **MINN. STAT. §541.051 BARS THE ASSOCIATION'S CLAIMS BASED ON AN "EXISTING STAINLESS STEEL BOILER FLUE PIPING" CONDITION ACCEPTED BY THE ASSOCIATION IN THE PRIME CONTRACT**

Even if the Association is permitted to pursue its February 8, 2021 direct claims against ONE, the two year limitations period under Minn. Stat. §541.051 bars any claims predicated on an "existing stainless steel boiler flue piping" condition accepted by the Association in the Prime Contract as of the date of that contract, February 13, 2018.

The applicable version of Minn. Stat. § 541.051 provides:

> Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property **more than two years after discovery of the injury**, nor in any event shall such a cause of action accrue more than ten years after substantial completion of the construction. Date of substantial completion shall be determined by the date when construction is sufficiently completed so that the owner or the owner's representative can occupy or use the improvement for the intended purpose.

Minn. Stat. 541.051(a) (2017) (emphasis added).[9]   This Court may properly rule on the timeliness of the Demand.  *See I.S.D. No. 775 v. Holm Bros. Plumbing*, 660 N.W.2d 146, 150 (Minn. Ct. App. 2003) (ruling "the district court had the jurisdiction to rule on the

---

[9]      Section 541.051, subds. (a) and (c) were revised in 2018, but the revisions have no application to this matter because they apply only to claims accruing after May 9, 2018.  *See* Minn. Laws Chapter 116 (2018) (noting effective date is the day following final enactment, which was May 8, 2018).   Here, the claims accrued no later than February 13, 2018, the date of the Prime Contract.

timeliness of the demand for arbitration pursuant to the statute of limitations clause in the paragraph … of the parties' contract"); *200 Levee Drive Assocs. v. Bor-Son*, 441 N.W.2d 560, 563 (Minn. App. 1989) (statute of limitations is "a proper scope issue which may be effortlessly decided by the trial court during the action to stay arbitration."); *Day Masonry v. ISD 781*, N.W.2d 321, 333 (Minn. 2010).

The Demand attaches the Prime Contract which includes a February 16, 2018, Hayes' proposal, incorporated therein as Contract Exhibit A. *See* Demand (Doc. 1-1), at ECF p. 58. Exhibits are part of the Prime Contract. *Id.* (Doc. 1-1) at ECF p. 24, § 1.4.1 ("The Design-Build Documents consist of this Agreement between Owner and Design-Builder and its attached Exhibits"); § 1.4.2 ("The Design-Build Documents form the Contract. The Contract represents the entire and integrated agreement between the parties and supersedes prior negotiations, representations or agreements, either written or oral."). The February 16, 2018, proposal expressly identifies an "existing stainless steel flue piping" condition in the section entitled Mechanical Services Included, Boiler Replacement in Building A:

> Boiler replacement in Building A
> \*       \*       \*
> c.  Furnish and install five (5) condensing boilers with a ventilation system required to **utilize the existing stainless steel flue piping**.
> \*       \*       \*

February 16, 2018 Proposal (Doc. 1-1) at ECF p. 59, ¶2.c (emphasis added). This "existing stainless steel flue piping" condition was accepted by the Association as part of the Prime Contract on the contract's effective date, February 13, 2018. (Doc. 1-1) at ECF p. 18. The condition is also readily identifiable and would have been reasonably known to

23

the Association's Project Team upon review of the Hayes proposal.

The Demand also incorporates a November 5, 2020, letter to the Association's lawyer from Questions & Solutions Engineering, Inc. ("QSE"). (Doc. 1-1) at ECF p. 6, ¶12 ("QSE prepared a report dated November 5, 2020, that describes in detail the alleged design and construction defects. The report is incorporated herein by reference in its entirety…"); O'Meara Decl., ¶2, at Ex. 1 (Nov. 5, 2020 QSE Letter). QSE is designated in the Prime Contract as "persons or entities, in addition to the Owner's representative, who are required to review the Design-Builder's Submittals":

§ **1.2 Project Team**
§ **1.2.1** The Owner identifies the following representative in accordance with Section 7.1.1:
*(List name, address and other information.)*

Jason Mumme
First Service Residential
15 South 181 Street
Minneapolis,MN.55401
612-333-8713 Office
651-269-4213 Cell
Jason.mumme@fsresidential.com

§ **1.2.2** The persons or entities, in addition to the Owner's representative, who are required to review the Design-Builder's Submittals are as follows:
*(List name, address and other information.)*

Rebecca Ellis
QSE Engineering
1079 Falls Curve
Chaska, MN. 55318

Prime Contract (Doc. 1-1), at ECF p. 22, §§1.2.1, 1.2.2.  QSE's November 5, 2020, letter states:

**Boiler Flue**

**Contract Exhibit A (Attachment E) Page 2, Paragraph 2c stated that the new boilers would "utilize the existing stainless steel flue piping." However, there was no existing stainless steel flue piping in River Towers.** Contract Exhibit B (Attachment B) did not address the means for removing boiler exhaust air from the building.

Hayes's and ONE's erroneous understanding of existing conditions carried into ONE's May 31, 2018 Permit Set drawings, which showed a new boiler room horizontal flue connecting to an existing round vertical duct inside the existing chimney and running from the Basement to a discharge above Tower A roof.

There is an access door into the bottom of the existing chimney, but, during the scope development and design process, it appears that neither Hayes nor ONE looked into the chimney to determine if there was a stainless steel flue inside of it. This was a critical verification that Hayes/ONE should have performed before finalizing the design, executing a Design Build Amendment, and proceeding with demolition and construction.

When it was finally discovered that there was no stainless steel flue within the existing chimney into which the new boiler exhaust could tie, Hayes/ONE took a completely different approach to handling the boiler exhaust. They designed and installed a stainless steel flue that exited the building below the 2nd Floor to the west of the main entrance vestibule and discharged the moisture-laden boiler exhaust through a fan installed on the roof of the main lobby, just above street level. This did not meet Hayes' contractual requirements and drew a second citation from the historical preservation district. It also caused significant problems and created unacceptable hazards during the winter because the moisture- laden exhaust plume rapidly condensed and froze on the roof and sidewalk at the main entrance to the building.

The alternate flue configuration was clearly an unacceptable design, but Hayes installed it anyway without getting necessary approvals from the City of Minneapolis or performing appropriate analysis of the consequences. This situation could have been avoided if, as required to meet their professional obligations under the contract, Hayes/ONE had performed a thorough investigation of existing conditions before proposing a scope of work and project budget.

The unacceptable boiler exhaust system was evidence of:

.1   Failure to meet professional engineering standards-of-care by not confirming existing conditions upon which the design relied. In addition, designing and installing a clearly-unacceptable boiler flue system without appropriate review and approval.

.2   Failure to comply with historic district legal requirements.

25

O'Meara Decl., ¶2, Ex. 1, at pp. 13-14 (emphasis added).[10]

In addition, the QSE letter contains an even earlier Hayes proposal, dated January 11, 2018, which also expressly references the same "existing stainless steel flue piping" condition.  O'Meara Decl., ¶2, Ex. 1, at Attachment F, pp. 1-2, ¶2.c.

Based on the foregoing, the Association cannot contend it was unaware of any terms or conditions within the Prime Contract it signed, including the flue condition:

> [I]n the absence of fraud, mistake, duress, coercion, or unconscionable terms, a literate party who signs a contract, in ignorance of its contents, remains bound by its terms and conditions. *See Gartner v. Eikill,* 319 N.W.2d 397, 398 (Minn.1982); *accord N & D Fashions, Inc. v. DHJ Industries, Inc.,* 548 F.2d 722, 727 (8th Cir.1976) (citations omitted). A party therefore signs a contract at its own peril. Failing to read or understand the language of a contract serves as no defense under the law. *N & D Fashions, Inc.,* 548 F.2d at 727.

*Johnson v. Hubbard Broad.,* 940 F. Supp. 1447, 1454 (D. Minn. 1996) (Montgomery, J.); *see also Stevens v. U.S.*, 29 F.2d 904, 905 (8th Cir. 1928) ("If, in making a contract, the parties agree upon or assume the existence of a particular fact as the basis of their negotiations, they are estopped to deny the fact so long as the contract stands, in the absence of fraud, accident, or mistake.").

For purposes of section 541.051 with respect to the flue condition, the Association discovered the injury on February 13, 2018, the effective date of the Prime Contract, nearly three years before the Association filed its Demand with AAA on February 8, 2021, and well after the two year limitations period began.  *See 328 Barry Ave. v. Nolan*

---

[10]   Notably, the Prime Contract expressly includes QSE as part of the Association's designated Project Team contractually  required, in addition to the Owner's representative, to review Hayes' submittals.  Prime Contract (Doc. 1-1), at ECF p. 22, §§1.2.1, 1.2.2.

*Props. Grp.,* 871 N.W.2d 745, 749 (Minn. 2015) (section 541.051, subd. 1 "predicates the accrual of a cause of action, and the commencement of the statute of limitations, on the discovery of the injury"; it does not require construction to be substantially complete); *Sterling Heights v. Veit*, 2012 WL 5990311, at *2-3 (Minn. Ct. App. Dec. 3, 2012) (applying section 541.051 to bar contract claim based on failure to disclose defective conditions on the property as "arising out of the defective and unsafe condition of an improvement."); *Square 1 Ltd. P'ship. v. W.R. Grace*, 815 F.Supp. 1266, 1279 (D.Minn. 1993) (§541.051 limitations period commences "when a plaintiff has enough facts to be on notice that a potential injury may exist" and this time period "does not await a 'leisurely discovery of the full details' of the injury"); *Neitzke v. Williams*, 490 U.S. 319, 326–27, (1989) (Rule 12(b)(6) authorizes the Court to dismiss a claim on the basis of a dispositive legal issue.)

The Prime Contract, accepted by the Association effective February 13, 2018, undisputedly includes the "existing stainless steel flue piping" condition upon which the Association, nearly three years later, now claims is incorrect and for which ONE should be held liable.  The Association accepted this condition as part of the Prime Contract as a matter of basic contract law.  *See* Prime Contract (Doc. 1-1) at ECF pp. 23 § 1.4.2 ("The Contract represents the entire and integrated agreement between the parties and supersedes prior negotiations, representations or agreements, either written or oral."); *Cameo Homes v. Kraus-Anderson*, 394 F.3rd 1084 (8th Cir. 2005) (enforcing  21 day written claim notice under the contract to precludes claims).

## CONCLUSION

Obermiller Nelson Engineering, Inc. respectfully requests an Order:

(1)    Dismissing the Association's Demand for Arbitration against ONE with prejudice and on the merits;

(2)    Alternatively, staying the Association's Demand pending this Court's determination of all issues involving arbitrability of the Association's claims against ONE;

(3)    Alternatively, if the Court determines the Association may pursue its direct claims against ONE, ruling that Minn. Stat. § 541.051 bars any claims by the Association predicated on an "existing stainless steel boiler flue piping" condition expressly accepted by the Association in the Prime Contract.

(4)    Alternatively, if the Court denies ONE's Petition, staying this matter pending the adjudication of all claims in the arbitration matter.[11]

Respectfully submitted,

Dated: March 5, 2021        **O'MEARA, LEER, WAGNER & KOHL, P.A.**

*s/ Shamus P. O'Meara*

_____

Shamus P. O'Meara (#221454)
Mark R. Azman (#237061)
7401 Metro Boulevard, Suite 600
Minneapolis, MN 55439-3034
(952) 831-6544
spomeara@olwklaw.com

**ATTORNEYS FOR PETITIONER OBERMILLER NELSON ENGINEERING, INC.**

---

[11] *See Bam Navigation v. Wells Fargo,* 2021 WL 533692 *3, 5 (D. Minn. Feb. 12, 2021) (Brasel, J.) ("When a case may not fully resolve a dispute, a stay is appropriate. Because here the arbitrator may find that BAM's claims do not fall within the arbitration provision, the Court will stay the case."); 9 U.S.C. § 3 (stating district courts " shall ... stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement").