## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Obermiller Nelson Engineering, Inc., a North Dakota corporation,<br><br>Petitioner,<br><br>v.<br><br>River Towers Association, a Minnesota nonprofit Association, and Langston Pearson Enterprises, Inc. dba Hayes Automation, a Minnesota corporation.<br><br>Respondents. | Court File No.: 21-cv-463 (JRT/TNL)<br><br><br>**RIVER TOWERS ASSOCIATION'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OBERMILLER NELSON ENGINEERING, INC.'S PETITION/MOTION** |

River Towers Association ("Association") moves to dismiss the pleading of Obermiller Nelson Engineering, Inc. ("ONE") self-styled as a "Petition/Motion for Order Dismissing and/or Staying Respondent River Towers Association's Demand for Arbitration."  Alternatively, the Association moves to stay this action and compel arbitration.  The Petition/Motion of ONE is both procedurally improper and substantively without merit.  As a result, this action should be dismissed, or stayed, under Fed. R. Civ. P. 12(b)(6) or 9 U.S.C. § 3.

## INTRODUCTION

The gist of ONE's imprecisely designated Petition/Motion[1] is that ONE seeks to avoid arbitrating the Association's claims against ONE in a pending AAA arbitration

---

[1] On March 5, 2021, ONE filed a motion and a supporting memorandum of law with the court, which overlap with the relief sought in ONE's "Petition/Motion."  While many of the arguments

proceeding.  ONE asks that this court issue an order dismissing the claims against it, or in the alternative, staying the arbitration proceeding.  ONE's Petition/Motion should be dismissed.  As an initial matter, ONE's filing is procedurally unsound.  There is no such thing under the Federal Rules of Civil Procedure as a "Petition/Motion" filed with the court to dismiss claims in a pending arbitration proceeding.  To the extent that the Petition/Motion alternatively asks the court to stay the arbitration proceeding, ONE should have filed its request as a motion for a temporary restraining order ("TRO"), and set forth the grounds on which it is entitled to injunctive relief.[2]  In light of the heavy burden ONE would bear to prevail on a TRO motion, ONE has eschewed such a motion and has replaced it with something unrecognizable.  At the same time, ONE has requested that the arbitration panel dismiss ONE from the arbitration on exactly the same grounds.  Even if the court were inclined to overlook these irregularities, ONE's own Petition/Motion and associated filings in this action confirm that ONE is required to arbitrate the claims it asks the court to help it avoid.  Indeed, the same documents establish that the question of arbitrability itself has been unambiguously delegated to the

---

raised in ONE's motion are necessarily addressed here, the Association reserves its right to respond more fully in briefing addressed directly to the motion.  As of the date of this filing the court has not set a hearing date or briefing schedule for that motion.

[2] A district court considers four factors when evaluating whether a TRO is warranted: (1) the threat of irreparable harm to the movant, (2) the balance between this harm and the injury that the injunction will inflict on other parties, (3) the probability that the movant will succeed on the merits and (4) the public interest.  *Jackson v. Macalester Coll.*, 169 F. Supp. 3d 918, 921 (D. Minn. 2016) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir.1981)). The movant bears a heavy burden to prove entitlement to a TRO, which is an extraordinary equitable remedy.  *Life Time Fitness, Inc. v. DeCelles*, 854 F. Supp. 2d 690, 694 (D. Minn. 2012) (citing *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)).

arbitration panel in the first instance.  Therefore, the court should dismiss ONE's improper lawsuit.

## FACTUAL BACKGROUND

ONE filed its Petition/Motion in with the context of a large construction dispute that is now in arbitration before the American Arbitration Association ("AAA").  The underlying facts are set forth in detail in the Association's demand for arbitration, which was filed on February 2, 2021 (included as Exhibit A to ONE's Petition/Motion, ECF Doc. No. 1-1).  The Association is made up of over 500 homeowners who live at the River Towers condominium complex in downtown Minneapolis, a development that was built in the mid-1960s.  The Associations claims arise from a botched $5 million project to revitalize the heating, ventilation and air conditioning system ("HVAC system") at the development.  ONE was the design engineer for the project.

In June 2017, the Association engaged Langston Pearson Enterprises, Inc. dba Hayes Automation ("Hayes") to study design options for a largescale HVAC revitalization.  Petition/Motion Ex. A at p. 4 (¶ 6).  Hayes consulted with ONE to provide engineering and design options for the project.  Petition/Motion Ex. A at p. 4 (¶ 6).  In October 2017, Hayes and ONE delivered a joint presentation to the Association assessing the HVAC system, presenting design alternatives and specifically recommending an approach to upgrade the aging equipment.  Petition/Motion Ex. A at pp. 4-5 (¶¶ 7-8).  In spring 2018, after Hayes and ONE had completed a more thorough investigation of the HVAC system, Hayes and ONE jointly presented a revised scope of work. Petition/Motion Ex. A at p. 5 (¶ 9).  Throughout the design process, the Association

3

worked with both Hayes and ONE, with the understanding that ONE would serve as the designer of the project and prepare the plans for the construction.  Petition/Motion Ex. A at p. 5 (¶ 9).  Based on this understanding, the Association executed a design/build contract with Hayes ("Prime Contract") dated February 13, 2018, and signed sometime after March 2, 2018.  Petition/Motion Ex. A at p. 5 (¶ 10).

The Prime Contract contains numerous references to ONE's involvement in the project.  ONE is specifically named in Article 2, Compensation and Progress Payments, which provides the hourly rate of Paul Nelson of ONE and Chad Langston of Hayes.  Petition/Motion Ex. A at p. 24.  Exhibit B to the Prime Contract, the joint proposal prepared by Hayes and ONE, sets forth the project objective, options, and recommendations.  Petition/Motion Ex. A at pp. 61-73.  ONE's engineering services are a line item included in the proposed estimate.  Petition/Motion Ex. A at p. 72.  By the time ONE entered into its subcontract with Hayes on March 15, 2018 (the "Subcontract"), ONE had been consulting for months with the Association and had been presenting options for the project design.  Petition/Motion Ex. A at p. 74 (Hayes/ONE Subcontract).  ONE implies in its Petition/Motion that the Association is some stranger trying to force ONE to arbitrate unknown and unexpected claims.  Nothing could be further from the truth.

As the work proceeded, Hayes submitted payment applications to the Association and was paid $4,522,964.75.  Petition/Motion Ex. A at p. 5 (¶ 11).  However, the Association became concerned that Hayes and ONE's work was defective and would not meet the objectives and terms of the contract.  *See* Petition/Motion Ex. A at p. 5 (¶ 11).

4

In October 2019, the Association engaged Questions & Solutions Engineering, Inc. ("QSE") to investigate problems on the project. QSE ultimately prepared a report dated November 5, 2020, which showed that the project was seriously flawed in both design and construction. *See* Petition/Motion Ex. A at p. 6 (¶ 12). From October of 2019 through April of 2020, the Association gave Hayes and ONE numerous oral and written notices of the defects that QSE was discovering and provided opportunities to cure the deficiencies. Petition/Motion Ex. A at p. 7 (¶ 14). However, while Hayes and ONE made promises to redesign the HVAC system and resolve the problems, they never did so. *See* Petition/Motion Ex. A at p. 7 (¶ 14). Hayes also notified the Association that it was planning to cease doing business after the work was completed, and thus it would be unable to satisfy the warranty obligations on its own. *See* Petition/Motion Ex. A at p. 7 (¶ 14). Having lost all confidence in Hayes and ONE's ability to perform, on May 13, 2020, the Association terminated their right to perform further work on the project. Petition/Motion Ex. A at p. 7 (¶ 15).

The defects at issue in this case are no minor mistakes. The Hayes/ONE design made massive miscalculations regarding airflow, providing for *less than 11%* of the fresh outside ventilation airflow needed for the two residential towers. Petition/Motion Ex. A at p. 6 (¶ 12). The new boilers installed to heat the project also provided less than 80% of the required capacity, and the new boiler for domestic hot water was inappropriately sized and repeatedly failed. Petition/Motion Ex. A at p. 6 (¶ 12). In addition to violating the terms of the contract, building code, and commonly accepted standards of care, the defects also created significant life-safety hazards. Petition/Motion Ex. A at pp. 6-7 (¶¶

5

12-13).  The Hayes/ONE design relied on a dangerously undersized combustion air intake system for the new boilers and failed to address code violations in the boiler/chiller room ventilation system.  Petition/Motion Ex. A at p. 6 (¶ 12).  The defects also damaged property outside the scope of the project, including unprotected heating coils that froze, broke and flooded several areas within the building.  Petition/Motion Ex. A at p. 7 (¶ 13).  Finally, rather than reusing the existing chimney for boiler exhaust, Hayes installed a stainless steel flue that exited from the building and discharged moisture-laden boiler exhaust just above the roof at the main entry to River Towers.  Petition/Motion Ex. A at p. 6 (¶ 12).  Not only did this violate the requirements of the historical preservation district in which River Towers is located, it created hazardous conditions in colder weather when the exhaust plume rapidly condensed and formed a fog that impaired visibility for passing motorists, and froze on the roof and sidewalks at the main entrance to the building.  Petition/Motion Ex. A at pp. 6-7 (¶¶ 12-13).  The exposed flue, as well as return air ductwork installed at the roof level of the building drew citations from the City of Minneapolis for violating historic preservation standards.  Petition/Motion Ex. A at pp. 6-7 (¶¶ 12-13)

 With the assistance of QSE, the Association solicited competitive proposals from mechanical contracting firms capable of designing and performing remedial work that would correct the Hayes/ONE defects.  Petition/Motion Ex. A at p. 8 (¶ 17).  The Association ultimately contracted with Harris St. Paul, Inc. at an estimated cost of $5,534,671 – approximately $1 million more than the not-to-exceed sum of the original

contract.  Petition/Motion Ex. A at p. 8 (¶ 18).  To put it simply, the defects in this case are substantial and pervasive, and they indicate an egregious lack of care.

The Prime Contract contains a mandatory mediation provision, which states that matters in controversy shall be subject to mediation as a condition precedent to binding dispute resolution.  Petition/Motion Ex. A at p. 49 (Section 14.3.1).  It further provides that disputes will be resolved by arbitration, Petition/Motion Ex. A at p. 22 (Section 1.3), and that any claim not resolved by mediation shall be subject to arbitration by a private arbitrator in accordance with the AAA's Construction Industry Rules, Petition/Motion Ex. A at p. 49 (Section 14.4.1).  The Prime Contract states that the party filing a notice of demand for arbitration "must assert in the demand all Claims then known to that party on which arbitration is permitted to be demanded."  Petition/Motion Ex. A at p. 49 (Section 14.4.1).

The Subcontract between Hayes and ONE expressly binds ONE to the Prime Contract's arbitration clause and requires that ONE join any arbitration between the Association and Hayes.  Specifically, the Subcontract states:

> Insofar as the terms of the Prime Contract and or the obligations and responsibilities which Hayes by the Prime Contract has assumed toward Owner are applicable to the Work, Subcontractor assumes toward Hayes all of the obligations and responsibilities which Hayes by the Prime Contract has assumed toward Owner and shall be bound to Hayes not only by the terms of this Contract but also by the terms of the Prime Contract. **To the extent that any arbitration proceeding or legal action between Owner and Hayes involves any act or omission of Subcontractor or any Work required to be performed hereunder by Subcontractor, Subcontractor shall, if requested by Hayes, join in such arbitration proceeding or legal action as a party,** it being specifically understood and agreed that Subcontractor expressly consents to the jurisdiction an venue of, and agrees

7

to be bound by any decision rendered in connection with, any such arbitration proceeding or legal action.

Petition/Motion Ex. A at p. 78 (emphasis added). ONE's consent to join arbitration is again referenced in the Subcontract's Applicable Law provision, which states:

> The terms and conditions of this Contract shall be construed in accordance with the laws of the state in which the Project is located. **Subject to the obligation of Subcontractor ~ to join in any arbitration proceeding or legal action between Owner and Hayes as set forth hereinabove,** any dispute between Hayes and Subcontractor arising out of or relating to this Contract or the Work shall be resolved by litigation commenced in a court of competent jurisdiction in the state in which the Project is located, if such litigation is initiated in or within six (6) months after the Project is fu11y completed, and in the state or province, or federal courts of the , [sic] if such litigation is initiated after such period, it being specifically understood and agreed that Hayes and Subcontractor expressly consent to the jurisdiction and venue of such courts.

Petition/Motion Ex. A at p. 81 (emphasis added).

Consistent with the dispute resolution provision of the Prime Contract, the Association demanded that Hayes and ONE mediate the Association's claims. All parties agreed to mediate and selected John Harens of the Harens Mediation Center as the mediator. On January 26, 2021, the Association, Hayes, and ONE all participated in a mediation as required by Section 14.3 of the Prime Contract. Petition/Motion Ex. A at p. 15 (¶ 59). After the mediation resulted in an impasse, the Association filed its demand for arbitration with the AAA on February 2, 2021, commencing Arbitration Case No.: 01-21-0001-1348, and including claims against ONE for breach of contract (by a third-party beneficiary) and professional negligence. Petition/Motion Ex. A at pp. 14-17. On February 17, 2021 Hayes filed an Answer and Cross-claim against ONE in the AAA arbitration, including claims for contractual reimbursement and indemnity, breach of

contract, and contribution and indemnity.  Petition/Motion Ex. B at pp. 1-11.  In its filing, Hayes demanded ONE's participation in the arbitration.

On March 23, 2020, the AAA appointed a panel of three distinguished construction lawyers to serve as arbitrators in the matter:  Steve Champlin (formerly of Dorsey & Whitney), Jim Hartnett (of Faegre Drinker Biddle) and Kirk Kolbo (formerly of Faegre Drinker Biddle and of Maslon, LLP).  The arbitration panel has not yet conducted its first hearing in the matter, but it is expected that a preliminary hearing will be scheduled very soon, at which time any issues relating to jurisdiction of the panel and arbitrability of the claims will be addressed.

ONE commenced this action by filing its Petition/Motion in this Court on February 19, 2021.  On February 22, 2021, ONE filed with the AAA an Objection to Demand for Arbitration and Crossclaim, Answering Statement, Answer to Hayes Crossclaim, and Crossclain against Hayes.  *See* O'Meara Declaration Ex. 2 (ECF Doc. No. 10-2).

## LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that the court dismiss a complaint for failure to state a claim upon which relief can be granted if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When reviewing a Rule 12(b)(6) motion, a court must "tak[e] all facts alleged in the complaint as true, and mak[e] reasonable inferences in favor of the nonmoving party." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014).  Although the factual allegations need not be detailed, they "must be

enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court ordinarily does not consider matters outside the pleadings on a motion to dismiss, Fed. R. Civ. P. 12(d), however, it may "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)).

A party who believes that a dispute is subject to arbitration may move for an order compelling arbitration and staying the proceedings.  9 U.S.C. § 3.  In ruling on a motion to compel arbitration and stay proceedings under the Federal Arbitration Act (FAA), a district court does not determine the merits of the substantive issues, but rather simply decides whether the parties have agreed to submit a particular grievance to arbitration. *Meeks v. Pioneer Energy Services*, CV 14-0412 (ADM/JJG), 2014 WL 12601075, at *1 (D. Minn. June 3, 2014) (citing *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc.*, 516 F.3d 695, 699 (8th Cir. 2008)).  When considering such a motion, the court is therefore limited to determining: (1) whether the specific dispute is within the scope of the agreement; and (2) whether a valid agreement to arbitrate exists between the parties. *Id.* (citing *Pro Tech Indus. Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004)).  A court must stay the proceedings before it and compel arbitration if the dispute falls within the scope of a valid arbitration agreement.  *Benacquisto v. Am. Express Fin. Cor*p., 373 F. Supp. 2d 966, 968 (D. Minn. 2005) (citing *Houlihan v. Offerman & Co.*, 31 F.3d 692, 694–95 (8th Cir. 1994)); *see also* 9 U.S.C. §§ 3 & 4.  District courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy

between the parties will be resolved by arbitration.  *Green v. SuperShuttle Int'l, Inc.*, 653

F.3d 766, 769–70 (8th Cir. 2011).

## ARGUMENT

## I.   THE GOVERNING AAA RULES PROVIDE THAT QUESTIONS OF ARBITRABILITY ARE FOR THE ARBITRATOR.

By filing in this court, ONE has bought its dispute on arbitrability to the wrong

forum.  Arbitrability questions must be considered with a "healthy regard for the federal

policy favoring arbitration" and "any doubts concerning the scope of arbitrable issues

should be resolved in favor of arbitration."  *Moses H. Cone Memorial Hosp. v. Mercury*

*Const. Corp.*, 460 U.S. 1, 24–25 (1983).  However, the FAA's pro-arbitration policy does

not operate without regard to the intent of the contracting parties, for arbitration is a

matter of consent, not of coercion. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*,

514 U.S. 52, 57 (1995) (internal citation omitted).

"Just as the arbitrability of the merits of a dispute depends upon whether the parties

agreed to arbitrate that dispute . . . so the question 'who has the primary power to decide

arbitrability' turns upon what the parties agreed about that matter."  *First Options of Chi.,*

*Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (internal citation omitted).  Parties can agree to

have arbitrators decide threshold questions of arbitrability.  *See Rent–A–Center, West,*

*Inc. v. Jackson*, 561 U.S. 63, 68-69 2010) ("We have recognized that parties can agree to

arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to

arbitrate or whether their agreement covers a particular controversy.").  Here, the AAA

Construction Industry Rules, which are specifically named in the Prime Contract and

11

incorporated by reference into ONE's Subcontract, clearly mandate that any objections to arbitrability are for the arbitrator and not a court:

> The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement.

R-9(a) AAA Construction Industry Arbitration Rules ("AAA Rules").  The Eighth Circuit and Minnesota courts have repeatedly recognized that where an arbitration provision incorporates the AAA Rules, such incorporation constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to the arbitrator. *Panchero's Franchise Corp. v. Excelsior Bay Inv. Group*, LLC, CV 09-2166 (MJD/JSM), 2010 WL 11646657, at *2 (D. Minn. Feb. 11, 2010) (citing *Fallo v. High-Tech Institute*, 559 F.3d 874, 878 (8th Cir. 2009)); *Green v. SuperShuttle Int'l, Inc*., 653 F.3d 766, 769 (8th Cir. 2011) ("By incorporating the AAA Rules, the parties agreed to allow the arbitrator to determine threshold questions of arbitrability."); *N. Am. Composites Co. v. Reich*, No. 15–3537, 2016 WL 471353, at *1–2 (D. Minn. Feb. 5, 2016) ("[W]here, as here, the parties explicitly incorporate the AAA rules of arbitration, the parties have delegated the question of arbitrability to the arbitrator."); *Barkl v. Career Educ. Corp*., No. 10–3565, 2010 WL 4979231, at *2 (D. Minn. Dec. 2, 2010) ("Where an agreement to arbitrate mandates arbitration in accordance with the [AAA] Rules, the parties to the agreement have clearly and unmistakably agreed to assign the question of arbitrability to the arbitrator in the first instance."); *Long v. Miller*, CV 17-424 (DSD/FLN), 2017 WL 1968630, at *2 (D. Minn. May 11, 2017) ("the question of

12

arbitrability must be determined by the arbitrator notwithstanding the absence of an arbitration clause in the Bank of America loan documents.").

The Eighth Circuit recently considered a case on appeal from this court with strikingly similar facts. In *Eckert Wordell Architects, Inc.*, a design/builder sought to avoid a pending AAA arbitration proceeding by arguing that the owner entity/claimant who initiated the demand for arbitration was not a signatory to its architectural services contract, and therefore there was no agreement requiring it to arbitrate disputes. *Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756 F.3d 1098, 1099 (8th Cir. 2014). The design/builder then filed suit in this court, seeking a declaratory judgment that the architectural services contract did not require it to arbitrate the dispute. *Id.* at 1099-1100. The court considered competing motions for summary judgment and ruled against the design/builder, finding that the contract (which also incorporated the AAA Rules) committed to the arbitrator the issue of whether the claimant, as a non-signatory, could use the arbitration provision to compel the signatory to arbitrate. *Id.* As a result, the district court dismissed the case in favor or arbitration. *Id.* The Eight Circuit affirmed. *Id.*

Here too, the parties have clearly and unmistakably delegated issues of arbitrability to the arbitrator. Indeed, ONE itself implicitly concedes as much by virtue of its filings with the AAA. ONE filed its Objection to Demand for Arbitration and Crossclaim, Answering Statement, Answer to Hayes Crossclaim and Crossclaim Against Hayes, showing that it too was referring questions of jurisdiction and arbitrability to the AAA arbitration panel. ONE is required to abide by its agreement and the court should

13

stay or dismiss this action and refer such issues of arbitrability to the arbitrator in the first

instance.

## II.   ONE'S SUBCONTRACT EXPRESSLY REQUIRES IT TO JOIN THE AAA ARBITRATION, WHICH INCLUDES THE ASSOCIATION'S CLAIMS AGAINST ONE.

ONE asserts that it cannot be forced to arbitrate the Association's claims against it

because there is no direct contract between ONE and the Association.  However ONE's

own Subcontract states in no uncertain terms that ONE consented to arbitrate precisely

such disputes:

> To the extent that any arbitration proceeding or legal action between Owner and Hayes involves any act or omission of Subcontractor or any Work required to be performed hereunder by Subcontractor, Subcontractor shall, if requested by Hayes, join in such arbitration proceeding or legal action as a party, it being specifically understood and agreed that Subcontractor expressly consents to the jurisdiction and venue of, and agrees to be bound by any decision rendered in connection with, any such arbitration proceeding or legal action.

Petition, Exhibit A at p. 78.  The Association's claims in its demand for arbitration

clearly implicate the acts or omissions of both Hayes and ONE.  If there were any

remaining doubt, Hayes filed its cross-claim against ONE in the AAA proceeding,

specifically contemplating (indeed, demanding) ONE's participation as required by the

Subcontract.  *See* Petition/Motion Ex. B (ECF Doc. No. 1-2).  It is hard to imagine how

ONE's obligation under the Subcontract could be more clearly spelled out.

ONE's Petition/Motion is based on the premise that by consenting to join an

arbitration proceeding between the Association and Hayes, ONE has only consented to

arbitrate claims brought directly by Hayes, and not claims advanced by the Association in

the same proceeding.  ONE's argument contradicts the plain language of the Subcontract.

Moreover, ONE's position makes no sense in light of the clear purpose of the consent to

joinder provision.  In the event of a dispute involving the Association and Hayes, ONE

explicitly agreed to *join such an arbitration proceeding*, which necessarily includes

arbitrating claims advanced by the Association in the same proceeding.  The Subcontract

does not state that ONE's consent to arbitrate is limited solely to claims brought by

Hayes or claims based on direct privity of contract.  No standard arbitration provision

would contain such restrictions, as such a reading would be wholly inconsistent with the

purpose of a joinder provision to promote the efficient resolution of disputes in a single

arbitration forum.  Construction projects are inherently complex undertakings that

involve the collaborative work of many different trades.  When disputes arise they

necessarily involve interwoven facts and require sorting out the roles and responsibilities

of different contractual parties.  By requiring subcontractors to consent to join arbitration

proceedings initiated by parties upstream, prime contractors aim to resolve disputes

efficiently and in a single forum.  ONE's theory that it can except itself from arbitrating

claims brought directly by the Arbitration would defeat this purpose and require the

Association to file a separate lawsuit against ONE in court.  This would needlessly

expand proceedings by requiring closely related claims to proceed separately along

parallel tracks risking inconsistent factual findings, and obviating the entire point of the

consent to joinder clause as a means by which disputes could be resolved efficiently in a

single proceeding.  *See Weaver v. State Farm Ins. Companies*, 609 N.W.2d 878, 884

(Minn. 2000) ("Arbitration is particularly appropriate where a speedy, informal and

15

relatively inexpensive procedure for resolving controversies is needed."); *Correll v. Distinctive Dental Services, P.A.*, 607 N.W.2d 440, 445 (Minn. 2000) (acknowledging efficiency as the purpose of the arbitration act).

Even if ONE could foster some doubt as to the scope of the claims permitted to be brought in one proceeding, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *In re CenturyLink Sales Practices & Sec. Litig.*, CV 17-2832, 2020 WL 7129889, at *4 (D. Minn. Dec. 4, 2020) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983) (footnote omitted)). "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citations omitted). A district court must send a claim to arbitration when presented with a broad arbitration clause "as long as the underlying factual allegations simply touch matters covered by the arbitration provision." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008) (citations omitted).

In cases with similar facts from other jurisdictions, courts have rejected attempts to avoid arbitration based solely on the fact that claims were brought by a party other than that with which the first party had directly contracted. *See e.g., Bruno v. Mark MaGrann Associates, Inc.*, 388 N.J. Super. 539, 543 (App. Div. 2006) (home purchasers were required to arbitrate claims against subcontractors, even though they had no contractual

16

relationship); *Cuningham Hamilton Quiter, P.A. v. B.L. of Miami, Inc*., 776 So.2d 940, 942 (Fla. Ct. App. 2000) (owner required to arbitrate claims against architect/engineer even where no signed contract between the parties; design-build prime contract made clear that the parties intended to settle disputes by arbitration).  Here too, the applicable contract agreements show the parties' agreement to arbitrate disputes.  ONE's Petition/Motion – which seeks relief directly at odds with its contractual requirement to join the AAA arbitration – should be dismissed.

## III.  ONE'S SUBCONTRACT INCORPORATES BY REFERENCE THE PRIME CONTRACT'S AAA ARBITRATION PROVISION.

Even if the Subcontract text were not already abundantly clear, the Prime Contract's arbitration requirement is expressly incorporated by reference into ONE's subcontract.  "Basic contract principles instruct that where a writing refers to another document, that other document ... becomes constructively a part of the writing" and "[t]he incorporated matter is to be interpreted as part of the writing."  *Granite Re, Inc. v. N. Lines Contracting, Inc*., 478 F. Supp. 3d 772, 777–78 (D. Minn. 2020) (citing *Halbach v. Great-W. Life & Annuity Ins. Co.*, 561 F.3d 872, 876 (8th Cir. 2009)).

Federal courts – including the Eighth Circuit – have identified five theories through which an arbitration clause can be enforced by or against a non-signatory.  *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005) (citing *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).  Those five theories are (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel.  *Reid v. Doe Run Res. Corp*., 701 F.3d 840, 846 (8th Cir. 2012) (citing

CORE/3518890.0002/165774324.1

*Thomson–CSF*, 64 F.3d at 776)).  "It is well settled that, under the Federal Arbitration Act, an agreement to arbitrate may be validly incorporated into a subcontract by reference to an arbitration provision in a general contract."  *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 978 (4th Cir. 1985); *U.S. Fid. & Guar. Co. v. W. Point Const. Co., Inc.*, 837 F.2d 1507, 1508 (11th Cir. 1988) (performance bond incorporated by reference the arbitration provisions of the subcontract, and therefore surety was required to arbitrate).

Here, ONE's Subcontract not only incorporates the Prime Contract by reference, it *specifically* calls out the Prime Contract's arbitration provision in two separate sections of the Subcontract.  *See* Petition/Motion Exhibit A at p. 78 (Subcontractor's Responsibilities) and 81 (Applicable Law).  Further, ONE expressly acknowledged in its Subcontract that all the Prime Contract documents had been made available to it.  *See* Petition/Motion Exhibit A at p. 78.  *See Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 621 (8th Cir. 1998) (a writing may incorporate another document if the terms of the incorporated document are known or easily available to the contracting parties).  Because ONE's Subcontract validly incorporates the Prime Contract's requirement for disputes to be resolved via arbitration before the AAA, ONE is required to arbitrate the claims brought by the Association.  ONE's Petition/Motion to the contrary should be dismissed.

## IV.   AS A THIRD-PARTY BENEFICIARY, THE ASSOCIATION SUCCEEDS TO HAYES' RIGHTS UNDER ITS SUBCONTRACT AND CAN THEREFORE DEMAND THAT ONE JOIN THE ARBITRATION.

Finally, the Association's claim under a third-party beneficiary theory allows it to stand in the shoes of Hayes and to exercise the contractual rights contained in Hayes'

18

Subcontract with ONE, including the right to request that ONE join the AAA arbitration proceeding.  "[S]tate contract law governs the ability of nonsignatories to enforce arbitration provisions." *Donaldson Co. v. Burroughs Diesel, Inc*., 581 F.3d 726, 732 (8th Cir. 2009) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009)).  That a third-party beneficiary may enforce an arbitration clause against a non-signatory is recognized by legal authority that ONE itself offered in support of its Petition   *See Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344, 356 (Minn. 2003) (citing Gabriel M. Wilner, *Domke on Commercial Arbitration* § 10.08 (1983) ("Finally, nonsignatories who are third-party beneficiaries may enforce an arbitration clause if the "contracting parties intended the third party to directly benefit from the contract.").  *See also Torres v. Simpatico, Inc*., 781 F.3d 963, 971 (8th Cir. 2015) (finding non-signatory could invoke arbitration clause as a third-party beneficiary of the contract under Missouri law).

Under the third-party-beneficiary doctrine, a third party may recover on a contract to which it is not a party if it can show that it is an intended beneficiary under either the intent-to-benefit or the duty-owed test *Cretex Cos. V. Constr. Leaders, Inc.*, 342 N.W.2d 135, 138-39 (Minn. 1984).  Under the intent-to-benefit test, "the contract must express some intent by the parties to benefit the third party through contractual performance." *Id.* at 138.  Under the duty-owed test, "the promisor's performance under the contract must discharge a duty otherwise owed the third party by the promisee." *Id.*  When reviewing the contract, all circumstances surrounding the contract should be considered.  *Julian Johnson Const. Corp. v. Parranto*, 352 N.W.2d 808, 811 (Minn. Ct. App. 1984) (citing *Buchman Plumbing Co. v. Regents of the University of Minnesota,* 298 Minn. 328, 334–

19

35, 215 N.W.2d 479, 483 (1974)). One circumstance considered is who receives performance. *Id.*

Here, ONE's Subcontract clearly contemplates the performance of the work for the benefit of the Association. The Association is identified as the "Owner" throughout the Subcontract, *see* Petition/Motion Ex. A at p. 74, and at the time ONE executed the Subcontract it had been consulting with both Hayes and the Association for months as to the scope and design for the project. The Subcontract contains no disclaimer of third-party beneficiary status; and it is evident from the Subcontract that the Association is the obvious intended recipient who will benefit from ONE's performance. It is equally clear that Hayes contracted with ONE for the engineering/design work – a critical component of the total project – and so was discharging a portion of Hayes' duty to the Association. Thus the Association meets the requirement for a third-party beneficiary under the Subcontract. *See Village Homes of Grandview Square II Ass'n v. R.E.C., Inc*., A19-1681, 2020 WL 4432818, at *7 (Minn. Ct. App. Aug. 3, 2020), *review denied* (Oct. 28, 2020) (affirming decision that condominium homeowner's association was third-party beneficiary of subcontract between general contractor and exterior stucco subcontractor).

In Minnesota the rights of third-party beneficiaries "depend upon, and are measured by, the terms of the contract." *Brix v. General Accident & Assurance Corp*., 254 Minn. 21, 24 (1958); Restatement (Second) of Contracts § 309 cmt. b (1981) (stating that a third-party beneficiary's rights are subject to limitations in the contract); *In re Hennepin County 1986 Recycling Bond Litig.*, 540 N.W.2d 494, 499 (Minn. 1995) (bondholders were entitled, as third-party beneficiaries, to enforce existing covenants in

CORE/3518890.0002/165774324.1

the bond agreements).  Here, as a third-party beneficiary, the Association succeeds to the rights of the contract holder (Hayes) under its Subcontract with ONE, including its right to require that ONE join the AAA arbitration proceeding.  ONE's Petition/Motion should accordingly be dismissed.

## CONCLUSION

For the reasons set forth above, the Association respectfully requests that the court dismiss ONE's Petition and deny ONE's motion seeking the same relief.  Alternatively, the court should stay this action and issue an order compelling ONE to proceed with the pending arbitration.

Dated:  March 25, 2021

*/s/ Steven R. Lindemann*
Steven R. Lindemann (MN 0197749)
**STINSON LLP**
50 South Sixth Street, Suite 2600
Minneapolis, MN  55402
Telephone: (612) 335-1500
Facsimile: (612) 335-1657
steve.lindemann@stinson.com

Christy M. Milliken (DC 1027689) (pro hac pending)
**STINSON LLP**
1775 Pennsylvania Avenue N.W., Suite 800
Washington, D.C.  20006-4605
Telephone: (202) 785-9100
christy.milliken@stinson.com

**ATTORNEYS FOR RIVER TOWERS
ASSOCIATION**