IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Obermiller Nelson Engineering, Inc., a North Dakota corporation,<br><br>              Petitioner,<br>vs.<br><br><br><br><br><br><br><br>River Tower Association, a Minnesota Nonprofit corporation, and Langston Pearson Enterprises, d/b/a Hayes Automation,<br><br><br>              Respondents | No. 21-CV-463 (JRT/TNL)<br><br><br><br>**RESPONDENT LANGSTON PEARSON ENTERPRISES, INC. D/B/A HAYES AUTOMATION'S MEMORANDUM OF LAW IN RESPONSE TO PETITIONER'S MOTION TO DISMISS** |

## **INTRODUCTION**

Petitioner Obermiller Nelson Engineering, Inc. (hereinafter "ONE") recently filed a Motion to Dismiss and/or Stay Arbitration of claims asserted by Respondent River Towers Association (hereinafter "Association") against ONE in a separate arbitration. ONE's Motion does not seek dismissal of any claims asserted against ONE by Respondent Langston Pearson Enterprises, Inc. d/b/a Hayes Automation (hereinafter "Hayes") in the arbitration.

Hayes submits this Responsive Memorandum to clarify that all claims and crossclaims asserted by the Association, Hayes, and ONE by and amongst one-another, are all arbitrable pursuant to the parties' contracts and the doctrine of equitable estoppel. Additionally, if this Court grants ONE's Motion to dismiss any claims asserted by the Association based on existing stainless steel boiler flue piping, Hayes respectfully joins that portion of ONE's Motion. Simply put, to the extent any time limitations under Minnesota Statutes Section 541.051 bar claims of the Association against ONE related to an existing stainless steel boiler flue piping, then all such claims are also barred against Hayes.

## **BACKGROUND**

It is undisputed that the Association entered into a contract with Hayes ("Prime Contract") for the HVAC revitalization project at River Towers Condominiums. (Doc. 10-3 at pp. 57–113). The Prime Contract provides that dispute resolution is to be resolved by binding arbitration. (Doc. 10-3 at pp. 61–62; *see also* Doc. 10-3 at p. 88 ("The foregoing agreement to arbitrate, and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement, shall be specifically enforceable under applicable law in any court having jurisdiction thereof.")).

It is also undisputed that Hayes subcontracted design work under the Prime Contract to ONE ("Subcontract"). (Doc. 1-1 at p. 74; Doc. 10-2 at pp. 95–105). ONE jointly created the proposal for the project with Hayes that was submitted to the Association as the basis for forming both the Prime Contract and Subcontract. (Doc. 10-3 at pp. 100–112). This proposal was incorporated into the Prime Contract. (Doc. 10-3 at p. 64). And the

2

Association's Demand for Arbitration noted that, on or about October of 2017, "Hayes and ONE jointly presented to the Association an assessment of the River Towers HVAC system and design alternatives that Hayes and ONE represented would meet certain objectives. . . ." (Doc. 10-3 at pp. 43–44).

"The Subcontract between Hayes and ONE also expressly states ONE's contractual obligations are provided toward Hayes, including any obligations flowing from the Prime Contract." (Doc. 9 at p. 4. Petitioner's Memo. (citing (Doc. 1-1) at ECF p. 78 (Responsibilities of Subcontractor))). The Subcontract identified and incorporated the Prime Contract by reference. (Doc. 10-3, pp. 113–114). Additionally, the Subcontract provided the following:

> [ONE] **shall** be bound to Hayes not only by the terms of this Contract but **also** by the **terms of the Prime Contract**. To the extent that **any arbitration proceeding** or legal action **between Owner and Hayes** involves **any act or omission of [ONE]**, **[ONE] shall**, if requested by Hayes, **join in such arbitration proceeding or legal action as a party**, it being specifically understood and agreed that [ONE] expressly consents to the jurisdiction an (sic) venue of, and agrees to be bound by **any** decision rendered in connection with, **any such arbitration** proceeding or legal action. . . .
>
> [ONE], by signing this Subcontract, acknowledges that it has independently assured itself that **all of the Prime Contract documents** have been available to it, and confirms that it has examined all such documents **and agrees that all of the aforesaid Prime Contract documents shall be considered a part of this Subcontract by reference thereto**.

(Doc. 10-3 at p. 117) (emphasis added).

After the Association initiated arbitration, "Hayes answered the Demand, cross-claimed against ONE and requested joinder of ONE to the extent Hayes is found liable for [the Association's] claims." (Doc. 9 at p. 5. Petitioner's Memo).

3

## ARGUMENT

ONE argues that because it was not a signatory to the Prime Contract, the Association cannot compel arbitration of its direct claims against ONE. The Subcontract mandates arbitration by incorporation and reference to the Prime Contract. Further, the Subcontract expressly provides that ONE must join the arbitration proceeding as a party, consent to the jurisdiction and venue of the arbitration, and be bound by "any decision rendered in connection with, **any such arbitration**" involving "**any act or omission of [ONE]**." (Doc. 10-3 at p. 117) (emphasis added).

ONE does not dispute its arbitration obligation under the Subcontract. ONE argues that because it is a non-signatory to the Prime Contract, the Association may not arbitrate direct claims against ONE. But the Association's Demand for Arbitration discussed the relationship between the Prime Contract and Subcontract, specifically referencing and attaching the Subcontract: "Hayes subcontracted with ONE to, among other things, design and engineer the HVAC revitalization project for River Towers and to serve as the engineer of record. . . . An arbitration clause is included on page 5 of the subcontract under the heading 'Responsibilities of Subcontractor.'" (Doc. 10-3 at p. 53). Thus, the Association seeks to arbitrate claims against ONE by invoking the arbitration clause of the Subcontract, as well as the Prime Contract.

Therefore, the question here must be analyzed from both ends: (1) whether the Association, as a signatory to the Prime Contract, may arbitrate direct claims against ONE,

a non-signatory to the Prime Contract; and (2) whether the Association, as a non-signatory to the Subcontract, may arbitrate its claims against ONE, a signatory to the Subcontract.

I. **THE ASSOCIATION MAY JOIN ONE, A NON-SIGNATORY TO THE PRIME CONTRACT, TO THE ARBITRATION BECAUSE THE SUBCONTRACT INCORPORATES THE PRIME CONTRACT BY EXPRESS REFERENCE AND EQUITABLE ESTOPPEL REQUIRES REFERENCE TO THE PRIME CONTRACT FOR ALL UNDERLYING CLAIMS ASSERTED BY THE PARTIES.**

"[A] willing signatory seeking to arbitrate with a non-signatory that is unwilling must establish at least one of the five theories described in *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)." *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005), quoting *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 131-32 (2d Cir. 2003). "Those five theories are (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel." *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 846 (8th Cir. 2012) citing *Thomson-CSF*, 64 F.3d at 776; *see also LEI Packaging, LLC v. Emery Silfurtun Inc.*, 2015 U.S. Dist. LEXIS 170722, at *11 (D. Minn. Dec. 22, 2015).

    a. **The Prime Contract and Arbitration Clause Therein were Incorporated into the Subcontract by Reference.**

Here, the Subcontract expressly incorporates the Prime Contract. (Doc. 10-3, pp. 113–114, 117). The Subcontract further provides:

> [ONE] **shall** be bound to Hayes not only by the terms of this Contract but also by the **terms of the Prime Contract**. To the extent that **any arbitration proceeding** or legal action **between Owner and Hayes** involves **any act or omission of [ONE]**, [ONE] **shall**, if requested by Hayes, **join in such arbitration proceeding or legal action as a party**, it being specifically understood and agreed that [ONE] expressly consents to the jurisdiction an (sic) venue of, and agrees to be bound by **any** decision rendered in connection with, **any such arbitration** proceeding or legal action.

5

[ONE], by signing this Subcontract, acknowledges that it has independently assured itself that **all of the Prime Contract documents** have been available to it, and confirms that it has examined all such documents **and agrees that all of the aforesaid Prime Contract documents shall be considered a part of this Subcontract by reference thereto**.

(Doc. 10-3 at p. 117) (emphasis added).

ONE concedes it is bound to arbitrate Hayes' claims pursuant to the Subcontract. The Subcontract only calls for arbitration when arbitration has been initiated under the Prime Contract between the Association and Hayes. The arbitration clause in the Prime Contract is incorporated by reference in the Subcontract; therefore, ONE is bound to arbitrate all claims by and between the parties to the arbitration, including direct claims asserted by the Association against ONE.

### b. The Doctrine of Equitable Estoppel Permits Arbitration of Claims by and between the Parties.

Minnesota has not specifically addressed how equitable estoppel applies in the arbitration context. *See King Cole Foods, Inc. v. SuperValu, Inc. (In re Wholesale Grocery Prods. Antitrust Litig.)*, 707 F.3d 917, 921 (8th Cir. 2013). *King Cole* then applied federal law to the context of whether a non-signatory, under the facts of that case, could bind a signatory to arbitrate claims. *Id.* at 921–922. But we must first address ONE's argument because a non-signatory attempting to bind a signatory to an arbitration agreement is distinct from a signatory attempting to bind a non-signatory. *Nitro Distrib., Inc. v. Alticor, Inc.*, 453 F.3d 995, 999 (8th Cir. 2006). Since Minnesota law does not specifically provide precedential authority on this issue, courts have applied federal law.

6

"Nonsignatories can be bound to an arbitration agreement when they directly benefit from the agreement." *Reid v. Doe Run Res. Corp.*, 701 F.3d 840 at 846 (citing *Thomson-CSF*, 64 F.3d at 776). *Reid* then adopted the Fifth Circuit's two-prong "direct benefits estoppel" analysis to determine whether "a party can become bound to an agreement '(1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract.'" *Id.* (quoting *Noble Drilling Servs. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010)). At least two Minnesota District Courts have acknowledged that *Reid* adopted the "direct benefits estoppel" two-prong analysis and then also applied it to determine whether a non-signatory can be bound to an arbitration provision. *See LEI Packaging, LLC v. Emery Silfurtun Inc.*, 2015 U.S. Dist. LEXIS 170722, at *16–18 (D. Minn. Dec. 22, 2015); *ResCap Liquidating Trust v. LendingTree*, LLC, 2020 U.S. Dist. LEXIS 48632, *81–82 (D. Minn. Mar. 20, 2020).

Under the doctrine of equitable estoppel, Courts consider the parties' conduct after the contract was executed to determine whether the non-signatory embraced and benefitted from it. *See E-I DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 & n.7 (3d Cir. 2001).

Here, ONE knowingly sought and obtained direct benefits from the Prime Contract *and* asserted claims that must be determined by reference to the Prime Contract. ONE jointly created the proposal for the project with Hayes that was submitted to the Association as the basis for forming both the Prime Contract and Subcontract. (Doc. 10-3 at pp. 100–112). This proposal was incorporated into the Prime Contract. (Doc. 10-3 at p. 64). And

7

the Association's Demand for Arbitration noted that, on or about October of 2017, "Hayes and ONE jointly presented to the Association an assessment of the River Towers HVAC system and design alternatives that Hayes and ONE represented would meet certain objectives. . . ." (Doc. 10-3 at pp. 43–44).

Moreover, ONE is expressly referenced in the Prime Contract, including ONE's hourly billing rate as the design consultant for the project. (Doc. 10-3 at pp. 62, 64). As previously discussed, the Subcontract expressly incorporates the terms of the Prime Contract. ONE also asserted crossclaims against Hayes that stem from the Prime Contract, including contribution and indemnity for the Association's claims and to collect unpaid invoices ONE submitted to Hayes for work it allegedly performed on the project—ONE's design work *is the core of the dispute between the parties*. (Doc 10-2 at p. 15). Accordingly, equitable estoppel prevents ONE from avoiding arbitration of the Association's claims because all claims and provisions at issue under the Subcontract require enforcement and reference to the Prime Contract.

## II. THE ASSOCIATION, A NON-SIGNATORY TO THE SUBCONTRACT, MAY INVOKE THE ARBITRATION CLAUSE THEREUNDER TO ARBITRATE DIRECT CLAIMS AGAINST ONE BECAUSE THE RELATIONSHIP OF THE PARTIES, ISSUES, AND AGREEMENTS ARE CLOSELY INTERTWINED.

In certain circumstances, a non-signatory to an arbitration agreement can be bound to it under traditional principles of contract law. *PRM Energy Sys. v. Primenergy, L.L.C.*, 592 F.3d 830, 834 (8th Cir. 2010). The Eighth Circuit has held that a non-signatory may compel a signatory to arbitrate when "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to

invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided," or when "the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 799 (8th Cir. 2005); *see also Broughton v. Hold Bros. On-Line Inv. Servs., Inc.*, 2002 U.S. Dist. LEXIS 15061, *18–21 (D. Minn. Aug. 12, 2002) (discussing equitable estoppel in arbitration context under the two-prong analysis and Minnesota's approach to the same where claims involve a close relationship between signatory and non-signatory parties).

"A willing nonsignatory seeking to arbitrate with a signatory that is unwilling may do so under what has been called an alternative estoppel theory which takes into consideration the relationships of persons, wrongs, and issues . . . .'" *CD Partners*, 424 F.3d at 799.

As the first sentence of ONE's Memorandum states, "[b]y written subcontract, [ONE] provided certain mechanical and electrical engineering services to [Hayes] **in connection with** Hayes' design-build prime contract with [the Association] for HVAC upgrades to the Association's residential buildings." (Doc. 9 at p. 1) (emphasis added). ONE further explained that the scope of professional services it provided for the project were defined in the Subcontract. (Doc. 9 at p. 3). The Subcontract defines the owner of the project as the Association, expressly incorporates the Prime Contract, and provides the scope of work ONE was to perform in accordance with the Prime Contract. (Doc. 10-3, pp. 113–114, 117).

9

ONE jointly created the proposal for the project with Hayes that was submitted to the Association as the basis for forming both the Prime Contract and Subcontract. (Doc. 10-3 at pp. 100–112). This proposal was incorporated into the Prime Contract. (Doc. 10-3 at p. 64). The Prime Contract mandates arbitration of claims between the Association and Hayes. (Doc. 10-3 at pp. 61–62, 88). The Subcontract incorporates the Prime Contract <u>and</u> requires ONE to join the arbitration. (Doc. 10-3, pp. 113–114, 117). After the Association filed its demand for arbitration, Hayes asserted crossclaims against ONE and joined ONE to the arbitration. (Doc. 10-2 at pp. 106–117).

The Association's Demand for Arbitration discussed the relationship between the Prime Contract and Subcontract, specifically referencing and attaching the Subcontract: "Hayes subcontracted with ONE to, among other things, design and engineer the HVAC revitalization project for River Towers and to serve as the engineer of record. . . . An arbitration clause is included on page 5 of the subcontract under the heading 'Responsibilities of Subcontractor.'" (Doc. 10-3 at p. 53). Thus, the Association seeks to arbitrate claims against ONE by invoking the arbitration clause of the Subcontract, as well as the Prime Contract. This makes sense where the parties and agreements are intimately connected from formation of the agreements through allegations of breaches of the same.

Simply put, ONE has been intimately involved with defining the project scope that was incorporated into both the Prime Contract and Subcontract. ONE now seeks to avoid arbitration of the Association's claims against it solely because it did not sign an arbitration agreement directly with the Association. But the two agreements are not entirely separable; claims arising under one agreement require reference to the other. Therefore, even though

10

ONE did not sign an arbitration agreement with the Association, whether the Association seeks to arbitrate its direct claims against ONE under the arbitration clause of either the Prime Contract or Subcontract, the doctrine of equitable estoppel requires arbitration to avoid evisceration of the underlying agreements that ONE attempts to both claim benefits thereunder and disconnect itself therefrom.

### III. HAYES JOINS ONE'S MOTION TO DISMISS THE ASSOCIATION'S CLAIMS THAT ARE BASED ON THE EXISTING STAINLESS STEEL FLUE BOILER PIPING AS TIME-BARRED.

ONE argues that Minnesota Statues Section 541.051 bars any claims asserted by the Association predicated on an existing stainless steel boiler flue piping condition. Hayes joins this portion of ONE's Motion. If the Court determines that any claims asserted by the Association based on the existing condition of the stainless-steel flue boiler piping are time-barred by the statute of limitations/repose under Section 541.051, those claims are barred equally against both ONE and Hayes.

Actions involving damages arising out of an alleged defective and unsafe condition of an improvement to real property are limited by both a two-year statute of limitations and a ten-year statute of repose. Minn. Stat. § 541.051, subd. 1(a). The statute encompasses both direct claims and claims for contribution and indemnity. *See Brink v. Smith Cos. Constr.*, 703 N.W.2d 871, 875 (Minn. Ct. App. 2005), *rev. denied* (Minn. Dec. 21, 2005). The relevant statute reads in pertinent part:

> Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal, . . . arising out of the defective and unsafe condition of an improvement to real property, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or

> construction of the improvement to real property . . . more than two years after the cause of action accrues . . . nor in any event shall such a cause of action accrue more than ten years after substantial completion of the construction.

Minn. Stat. § 541.051, subd. 1(a). While this statute contains both the limitations and repose provisions, it is important to understand their operation separately. The statute of limitations mandates that a cause of action be brought within a specified period of time after it accrues (viz., two years). However, the statute of repose, as highlighted above, prevents a cause of action from accruing more than ten years following substantial completion of an improvement to real property, regardless of whether or not the plaintiff has discovered the injury. Thus, while the statute of limitations *bars* a cause of action if it is not brought within two years after discovery, the statute of repose *terminates* any right of action that may have existed following ten years from substantial completion of construction.

ONE argues that any claims related to the stainless-steel boiler flue piping are time-barred under the two-year statute of limitations. Hayes adds that any such claims are also time-barred by the ten-year statute of repose. The River Towers Condominium building was originally constructed in the mid-1960s. (Doc. 10-3 at p. 43). "With the exception of a chiller replacement in 2001, and some minor repairs and equipment replacements over the years, the heating, ventilation and air conditioning system ('HVAC system') at River Towers was about 50 years old." (Doc. 10-3 at p. 43). As pointed out by ONE, the Prime Contract expressly references the "existing stainless steel flue piping." (Doc 1-1 at p.18). The Association represented that this was a condition of the property that existed since

12

original construction, completed more than 50 years prior to entering the Prime Contract. Therefore, whether the Association asserts any claims related to the existing stainless steel flue piping based on its actual, original condition that existed on its property for more than 50 years (i.e., that it was not lined with stainless steel), or the Association's misrepresentation in the Prime Contract of the "existing stainless steel flue piping," such claims are time-barred under Minnesota Statutes Section 541.051.

## CONCLUSION

Based on the foregoing, Respondent Langston Pearson Enterprises, Inc. d/b/a Hayes Automation respectfully submits that all claims by and between Petitioner and Respondents are arbitrable. Additionally, Respondent Hayes joins Petitioner's Motion to dismiss any claims asserted by the Association based on an existing stainless steel boiler flue piping as time-barred under Minnesota Statutes Section 541.051 against all parties.

Respectfully submitted,

Dated: March 26, 2021            **WALDECK LAW FIRM P.A.**

By: /s/ Peter M. Waldeck
Peter M. Waldeck (0306058)
121 South Eighth Street, Suite 1400
Minneapolis, MN 55402
Telephone: 612.375.1550
*Attorneys for Respondents River Tower Association, and Langston Pearson Enterprises, Inc., d/b/a Hayes Automation*
pwaldeck@waldeckpa.com