IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Obermiller Nelson Engineering, Inc., a North Dakota corporation,<br><br>Petitioner,<br><br>vs.<br><br>River Towers Association, a Minnesota Nonprofit corporation, and Langston Pearson Enterprises, Inc. d/b/a Hayes Automation, a Minnesota Corporation<br><br>Respondents. | Court File No.: 21-cv-463 (JRT/TNL)<br><br><br>**PETITIONER OBERMILLER NELSON ENGINEERING, INC. RESPONSE MEMORANDUM OF LAW IN OPPOSITION TO RIVER TOWERS ASSOCIATION'S MOTION TO DISMISS (DOC. 19)** |

## <u>INTRODUCTION</u>

Petitioner Obermiller Nelson Engineering, Inc. (ONE) submits this memorandum in opposition to River Tower Association's (Association) motion to dismiss (Doc. 19). The Association contracted with Respondent Langston Pearson Enterprises, Inc. d/b/a Hayes Automation ("Hayes") to design and build an HVAC project for $4.93 million. Hayes separately subcontracted with ONE to provide certain engineering services for $265,500. After terminating its contract with Hayes, the Association filed an arbitration demand against both Hayes and ONE. ONE filed its Petition (Doc. 1) and moved to dismiss the Association's claims against ONE (Doc. 7) as no contract or arbitration agreement exists between the Association and ONE and because this Court must determine "arbitrability" — whether there is valid arbitration agreement between the Association and ONE and, if so, whether the Association's claims against ONE fall within that agreement.

ONE's motion to dismiss involves this Court's interpretation of the Subcontract's dispute resolution provision between ONE and Hayes, illustrated as follows:

| Litigation required for: | Arbitration required if: |
|---|---|
| • Any dispute between Hayes and ONE<br>   ○ Arising out of or relating to the Subcontract or the Work | • Hayes requests ONE join:<br>   ○ Any arbitration proceeding<br>      ▪ Between Owner and Hayes<br>         • For any act or omission of ONE or any Work required to be performed hereunder by ONE |

This interpretation involves a broad litigation provision for claims arising out of or relating to the Subcontract or the Work, and a narrow arbitration joinder request by Hayes for claims only *between the Association and Hayes*.[1]

## DOCUMENTS RELIED UPON

In addition to the Petition and documents therein (Docs. 1, 1-1), Questions & Solutions Engineering, Inc. ("QSE") November 5, 2020, letter (Doc. 10-1) at ECF p. 1,

---

[1]   Procedurally, the Association's attempt to "reserve its rights" (Mem. (Doc. 20) at 2 n.1) to later respond to ONE's motion to dismiss does not excuse its failure to oppose ONE's motion. *See* L.R. 7.1(c)2 (21 day requirement to oppose dispositive motion); *Hooper v. Cash Advance Centers*, 589 F.3d 917, 923 (8th Cir. 2009) (reservation of right is not an assertion of rights); *In re Mirant Corp.* 613 F.3d 584, 591 (5th Cir. 2010). The Court may consider ONE's motion to dismiss (Doc. 7) unopposed and any arguments in opposition to the motion waived. *See Peterson v. BASF Corp.*, 711 N.W.2d 470, 482 (Minn. 2006) ("failure to address issue in brief constitutes waiver of that issue"); *Clay v. Credit Bureau Enterprises,* 882 F. Supp. 2d 1083, 1111 (N.D. Iowa 2012), *aff'd*, 754 F.3d 535 (8th Cir. 2014) ("Failure to brief an issue in more than a 'perfunctory manner,' allows a court to consider the issue waived."); L.R. 7.1(g) (listing alternatives available to the Court). The Association also filed a letter with the Court (Doc. 26) claiming ONE's motion to dismiss is "procedurally improper," "premature" and must be referred to the arbitrators. *Id*. ONE opposed the letter (Doc. 28) as unnecessary and not permitted under the local rules.

Motion to Dismiss (Doc. 7), memoranda and declaration in support of its motion (Docs. 9, 10 and 29), ONE relies on this memorandum and the Second Declaration of Shamus O'Meara in opposition to the Association's motion to dismiss (Doc. 19). ONE previously submitted its Objection to Demand for Arbitration and Crossclaim, Answering Statement, Answer to Hayes Crossclaim, and Crossclaim against Hayes (Doc. 10-2), and its Request for Joinder of QSE, FirstService Residential Minnesota, Inc. dba FirstService Residential ("FirstService"), and Kraft Contracting LLC dba Kraft Mechanical LLC and Kraft Controls, LLC ("Kraft") (Doc. 10-3). ONE also submits the memoranda in opposition to joinder from QSE and FirstService.  Second O'Meara Decl.  Ex. A, B.

## FACTS

To avoid repetition, ONE relies on and incorporates the Facts section of its memorandum in support of motion to dismiss (Doc. 9).  ONE addresses specific facts as necessary in response to the Association's motion.

ONE is a mechanical and electrical engineer subcontractor to Hayes under a defined scope of services in the Subcontract, (Doc. 1-1) ECF p. 74, not the "design engineer" as claimed by the Association. The Association wrongly asserts ONE "participated in a mediation as required by Section 14.3 of the Prime Contract." (Doc. 20) at ECF p. 8).  ONE never agreed the mediation satisfied the Prime Contract, nor was the January mediation prompted by any mediation demand. ONE's counsel, months before, had suggested informal mediation with John Harens to the Association's lawyer. Second O'Meara Second Decl. at ¶ 2.

After receiving the Association's Demand for Arbitration, ONE filed its action in this Court.  Petition (Doc. 1).  To protect its interests in the arbitration proceeding, ONE then filed an Objection with the American Arbitration Association (AAA) (Doc. 10-2) expressly incorporating its Objection and Petition in its AAA filings:

- On February 19, 2021, ONE filed a Petition / Motion for Order Dismissing and/or Staying River Towers Association's Demand for Arbitration ("Petition") in The United States District Court for the District of Minnesota ("District Court"). ONE incorporates the Petition (attached as Exhibit A) by reference in its entirety as part of this Objection, and as part of ONE's Answering Statement, Answer to Crossclaim, and Crossclaim.

- ONE objects to the jurisdiction of the arbitrators and the arbitrability of the Association's Demand and Hayes' Crossclaim in this matter.

- without waiver of its rights and positions including all rights and positions in its Objection and Petition, …

- ONE expressly reserves and does not waive all of its rights and positions including but not limited to all rights and positions in its Objection, Petition, Answering Statement, Answer to Crossclaim, Crossclaim and under all applicable law and rules.

Objection (Doc. 10-2) at ECF pp.1-2 ¶¶ 1-5 (emphasis added); *Marathon Ashland Petroleum v. Int'l Bhd. of Teamsters*, 300 F.3d 945, 950 (8th Cir. 2002) (no waiver where plaintiff agreed to participate in selecting arbitration panel, while simultaneously objecting to arbitration and filing suit).  ONE expressly referenced its Objection in all subsequent filings with AAA.  O'Meara Second Decl. at ¶ 3.

The arbitration panel has not set any preliminary hearing, nor any schedule for briefing preliminary issues, or to address joinder requests, or any other substantive matter.  Second O'Meara Decl. ¶ 4.

**Relevant Contract Provisions**

The Subcontract requires that "any dispute between Hayes and [ONE] arising out of or relating to this [Subcontract] or the Work shall be resolved by litigation." Subcontract (Doc. 1-1) at ECF p. 81 (Applicable Law). This broad litigation provision is subject to a narrow arbitration joinder request *by Hayes* (*not* the Association) only for "any arbitration proceeding or legal action *between Owner and Hayes* for any act or omission of Subcontractor or any Work required to be performed hereunder by Subcontractor." *Id*. There is no arbitration clause or agreement allowing the Association to assert direct claims against ONE. The Association is not Hayes, nor are the Association's claims against ONE claims "between Owner and Hayes" as required for arbitration joinder under the Subcontract. *Id*. ONE and the Association are not parties to a contract and there is no arbitration agreement or any agreement to delegate arbitrability between them.

The Prime Contract between the Association and Hayes expressly states it creates no contractual relationships other than between the Association and Hayes, and that ONE's services as a consultant are solely for the benefit of Hayes:

§ **1.4.2 The Contract.** The Design-Build Documents form the Contract. The Contract represents the entire and integrated agreement between the parties and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. **The Design-Build Documents shall not be construed to create a contractual relationship of any kind between any persons or entities other than the Owner and the Design-Builder**

§ **3.1.6** When applicable law requires that services be performed by licensed professionals, the Design-Builder shall provide those services through qualified, licensed professionals. **The Owner understands and**

> **agrees that the services of the Design-Builder's Architect and the Design-Builder's other Consultants are performed in the sole interest of, and for the exclusive benefit of, the Design-Builder.**

Prime Contract (Doc. 1-1) at ECF pp. 23, 25 (emphasis added).[2]

## STANDARD OF ANALYSIS

ONE relies on and incorporates the Standard of Analysis section of its memorandum in support of motion to dismiss (Doc. 9).

ONE's motion to dismiss/stay arbitration is a recognized federal court process. *See* ONE brief (Doc. 9) at 6; *Landis v. North Amer.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Westmoreland Cap. v. Findlay*, 100 F.3d 263, 266 n.3 (2nd Cir. 1996) ("in appropriate circumstances, § 4 of the FAA may be applied to stay or enjoin arbitration proceedings."); *Tai Ping Ins. v. M/V Warschau*, 731 F.2d 1141, 1144-46 (5th Cir. 1984) (arbitration stay may be found if dispute not covered by arbitration agreement.); *Cheyney St. Coll. v. Hufstedler*, 703 F.2d 732, 737-78 (3d Cir. 1983); *Halley Opt. v. Jagar*, 752 F. Supp. 638, 639 (S.D.N.Y. 1990) ("Under 9 U.S.C. § 4, the proper procedure for a party to challenge whether it is subject to an arbitration agreement is to move the district court for a stay of arbitration."); *Rogers v. Ameriprise.,* 2008 WL 4826262, at *2 (N.D. Ill. Nov. 4, 2008) (stay within Court's discretion); *Minn. Fed Teachers v. ISD 361*, 310 N.W.2d 482, 484 (Minn.1981) ("In an action to compel or stay

---

[2]   ONE is a "Consultant" as defined in the Prime Contract.  *Id*., at ECF p. 23, §1.4.9 ("a person or entity providing professional services for the Design-Builder for all or a portion of the Work.").

arbitration the issue of arbitrability is to be determined by ascertaining the intention of the parties from the language of the arbitration agreement itself."); 9 U.S.C. § 4; 28 U.S.C. § 2201 *et. seq.* (Federal Declaratory Judgments Act); Minn. Stat. § 555.01 *et. seq.* (Minnesota Declaratory Judgments Act).

When deciding issues of arbitrability, "[t]he plain and ordinary meaning of the contract language controls, unless the language is ambiguous." *Parm v. Bluestem Brands*, 898 F.3d 869, 873 (8th Cir. 2018) ("[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants"); *Bus. Bank v. Hanson*, 769 N.W.2d 285, 288 (Minn. 2009); *Robbinsdale Public SCH v. Haymaker Constr.*, unpubl., 1997 WL 631521, *3 (Minn. Ct. App. Oct. 14, 1997) ("When evaluating the issue of arbitrability on a motion to stay arbitration, the court must ascertain the intention of the parties from the language of the arbitration agreement.").

"In deciding whether a dispute is subject to arbitration, the court must first determine whether the clause is broad or narrow." *Orbital ATK*. 2017 WL 3995538, at *2 (citing *Unison v. Juhl Energy Dev.*, 789 F.3d 816, 818 (8th Cir. 2015). "If the clause is broad, the presumption in favor of arbitration applies, and the court is required to send the claim to arbitration "as long as the underlying factual allegations simply touch matters covered by the arbitration provision. If the clause is narrow, 'the presumption of arbitrability is lessened.'") *Orbital*, at *2 (citing *Twin City Monorail, Inc. v. Robbins & Myers, Inc.*, 728 F.2d 1069, 1073 (8th Cir. 1984)). *See also Howsam v. Dean Witter Reynolds, Inc.* 537 U.S. 79, 83 (2002) ("Although the Court has also long recognized and enforced a liberal federal policy favoring arbitration agreements, it has made clear that

there is an exception to this policy: The question whether the parties have submitted a particular dispute to arbitration, i.e., the question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise."); *Esanbock v. Weyerhauser*, 367 F.Supp.3d 925, 934-35 (D.Minn. 2019) (Nelson, J.), appeal dismissed (Sept. 3, 2019) ("the FAA's presumptions favoring arbitration do not compel this Court to order arbitration of disputes that are clearly not within the scope of an arbitration provision.").

## ARGUMENT

**ONE Expressly and Explicitly Preserved its Rights in this Court**

Without citing any legal authority, the Association claims ONE "implicitly concedes" it delegated jurisdiction and arbitrability to the arbitration panel through its filings with the AAA." Brief (Doc. 20) at 13. ONE commenced its federal court action to dismiss the Association's direct claims against ONE, Petition (Doc. 1), stating and supporting its position that this Court, not the arbitrators, has authority to determine arbitrability issues for the Association's claims against ONE. *Id.* ONE also expressly objected to the jurisdiction and authority of the arbitrators in its Objection to Demand for Arbitration and Crossclaim, Answering Statement, Answer to Hayes Crossclaim, and Crossclaim Against Hayes, (Doc. 10-2), incorporating and filing a copy of its Petition with its AAA filings. Objection (Doc. 10-2) at ECF pp. 1-2 ¶¶ 1-5. Contrary to the Association's unsupported assertion, ONE clearly and explicitly preserved and protected its rights in this Court. *Id.; see Marathon Ashland Petroleum v. Int'l Bhd. of Teamsters*, 300 F.3d 945, 950 (8th Cir. 2002) (no waiver where plaintiff agreed to participate in

selecting arbitration panel, while simultaneously objecting to arbitration and filing suit);
*AGCO Corp. v. Anglin,* 216 F.3d 589, 593 (7th Cir.2000) (If "a party clearly and
explicitly reserves the right to object to arbitrability, his participation in the arbitration
does not preclude him from challenging the arbitrator's authority in court."); AAA Rule 9
(objections to arbitrator jurisdiction and arbitrability must be filed no later than answering
statement).

**This Court is Authorized to Determine Arbitrability**

ONE's Petition (Doc. 1) and motion (Doc. 7) and memoranda (Docs. 9 and 29) are
properly focused, requesting dismissal of the Association's direct claims against ONE
because there is no contract or agreement to arbitrate any claims between the Association
and ONE. This Court, not the arbitrators, is authorized to determine questions of
"arbitrability" (whether a valid agreement to arbitrate exists between the Association and
ONE, and, if so, whether the Association's claims against ONE fall within the scope of
that agreement). *See Granite Rock Co. v. Int'l Bd. of Teamsters*, 561 U.S. 287, 297
(2010) ("[A] court may order arbitration of a particular dispute only where the court is
satisfied that the parties agreed to arbitrate *that dispute*." — emphasis in original);
*Shockley v. PrimeLending*, 929 F.3d 1012 (8th Cir. 2019) (court properly determined
parties did not agree to arbitrate any disputes between them nor was a contract formed to
delegate this decision to an arbitrator); *Liberty Mut. v. Mandaree Pub.,* 503 F.3d 709, 711
(8th Cir. 2007) ("a federal court has jurisdiction to determine whether a question of
arbitrability must be decided by the court or by the arbitrator."); *I.S. Joseph v. Mich.
Sugar*, 803 F.2d 396, 399- 400 (8th Cir. 1986) ("If there is in fact a dispute as to whether

an agreement to arbitrate exists, then that issue must first be determined by the court as a prerequisite to the arbitrator's taking jurisdiction"); *Nebraska Machinery v. Cargotec,* 762 F.3d 737, 741 (8th Cir. 2014) (court decides validity of arbitration agreement itself despite incorporation of AAA rules); *Koch v. Compucredit* 543 F.3d 460, 464 (8th Cir. 2008) ("the validity of an assignment is a matter for the court"); *Bam Navigation, LLC v. Wells Fargo & Co.,* 2021 WL 533692 *3, 5 (D. Minn. Feb. 12, 2021) (Brasel, J.) ("Before addressing the issue of whether this dispute is within the scope of the arbitration agreement, the Court must determine which parties may enforce the agreement.") (citing *Lamps Plus*, *Inc*. *v*. *Varela*, 139 S. Ct. 1407, 1415 (2019)).

**Interpretation of the Subcontract's Dispute Resolution Provision**

The Subcontract's dispute resolution language states "any dispute between Hayes and [ONE] arising out of or relating to this [Subcontract] or the Work shall be resolved by litigation." (Doc. 1-1) at ECF p. 81. This broad litigation provision,[3] is subject only to a narrow joinder request *by Hayes* (*not* the Association) specifically and only for "any arbitration proceeding or legal action *between Owner and Hayes* for any act or omission of Subcontractor or any Work required to be performed hereunder by Subcontractor." *Id*. As noted above, the Subcontract dispute resolution provision can be illustrated as follows:

---

[3]     *See Fleet Tire Serv. v. Oliver Rubber Co*., 118 F.3d 619, 621 (8th Cir. 1997) (dispute resolution provision was broad because it covered claims "arising from" and "relating to" the agreement); *CD Partners, L.L.C. v. Grizzle*, 424 F.3d 795, 797 (8th Cir. 2005) (same); *Twin City Monorail,* 728 F.2d at 1073 (construing narrow arbitration clause on its face to reject arbitration of disputed claims).

| Litigation required for: | Arbitration required if: |
|---|---|
| • Any dispute between Hayes and ONE<br>  ○ Arising out of or relating to the Subcontract or the Work | • Hayes requests ONE join:<br>  ○ Any arbitration proceeding<br>    ▪ Between Owner and Hayes<br>      • For any act or omission of ONE or any Work required to be performed hereunder by ONE |

The Association's claims against ONE are clearly not claims "between Owner and Hayes" as expressly required for joining ONE under the Subcontract. *Id.* Under the Subcontract's clear and unambiguous language, which governs over any inconsistent provision of the Prime Contract, (Doc. 1-1) at ECF p. 81, there is no arbitration clause or agreement allowing the Association to assert direct arbitration claims against ONE. *See Granite Rock*, 561 U.S. at 297; *United Steelworkers v. Duluth Clinic*, 413 F.3d 786, 790 (8th Cir. 2005) (arbitration of collateral dispute not permitted under narrow arbitration provision); *Orbital ATK. v. Heckler & Koch*, No. 0:17-CV-00250-DSD-FLN, 2017 WL 3995538 (D.Minn. Sept. 8, 2017) (rejecting argument that arbitration provision controls over subcontract disputes excluded from the arbitration clause); *Flink v. Carlson*, 856 F.2d 44, 47 (8th Cir. 1988) (brokerage house arbitration claims stayed against non-signatory); *Adherent Labs. v. Dipietro,* unpubl., 2018 WL 3520843, *3 (Minn. Ct. App. Jul. 23, 2018) (no third-party beneficiary found to compel despite contract incorporating AAA rules); *M. A. Mortenson v. Saunders Concrete Company*, 2011 WL 2672248, at *7 (D. Minn. Jul. 8, 2011) (Frank, J.) (finding subcontract arbitration agreement did not cover dispute with non-party where subcontract "by its own terms only governed 'any

dispute arising between [parties] to the subcontract.'"); *Local 38N Graphic Commc'ns Conference/IBT v. St. Louis Post-Dispatch, LLC,* 638 F.3d 824, 826 (8th Cir. 2011) (court determined scope of arbitrability of terminated agreement); *Twin City Monorail,* 728 F.2d at 1073 ("clause in question is narrowly drawn and the presumption of arbitrability is lessened"); *Cummings v. Fedex.,* 404 F.3d 1258, 1262 (10th Cir. 2005) ("Under a narrow arbitration clause, a dispute is subject to arbitration only if it relates to an issue that is on its face within the purview of the clause, and collateral matters will generally be beyond its purview."); *E\*Trade Financial Corp. v. Deutche Bank AG*, 420 F.Supp.2d 273, 285 (S.D.N.Y. 2006) ("When a contract contains both a broad disputes provision permitting lawsuits and also an arbitration requirement set forth in one narrow context, courts routinely limit the arbitration requirement to disputes arising squarely in that narrow context."); *Progressive Cas. Ins. v. C.A. Reaseguradora*, 991 F.2d 42, 47-48 (2d Cir. 1993) ("[W]e have held that an arbitration agreement restricted to the immediate parties does not bind a non-party, notwithstanding words of incorporation or reference in a separate contract by which that non-party is bound."); *Upper Lakes Towing  v. ZF Padova*, Case No. 2:08-CV-63, 2009 WL 4730762, at *2 (W.D. Mich. Dec. 4, 2009) ("Courts have consistently drawn a distinction between arbitration clauses specifically identifying the parties to which it applies, and a broader form of arbitration clause which does not restrict the parties."); *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 845 F.3d 1351, 1356 (11th Cir. 2017) (refusing to allow non-signatory to compel arbitration where the agreement was limited to disputes between the parties); *CIP Constr. v. W. Sur. Co*. 2018 WL 3520832 *6 (M.D.N.C. Jul. 20, 2018) (narrow

arbitration clause reflects an intent to limit its scope to disputes "with respect to the terms of the Agreement" that are "between the parties") (and citing, at *7, *Mandaree*, 503 F.3d at 711) (highlighting contract's no contractual relationship provision in applying ordinary state law contract principles to determine whether parties agreed to arbitrate)

**The Association is not a Third Party Beneficiary of the Subcontract**

Despite the clear language of the Subcontract, the Association claims the Prime Contract between Hayes and the Association, incorporated into the Subcontract, mandates that it a third party beneficiary entitled to enforce arbitration of its claims against ONE.  However, the Prime Contract expressly states that it creates no contractual relationships other than between the Association and Hayes, and that ONE's services as a consultant are solely for the benefit of Hayes:

> § **1.4.2 The Contract.** The Design-Build Documents form the Contract. The Contract represents the entire and integrated agreement between the parties and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. **The Design-Build Documents shall not be construed to create a contractual relationship of any kind between any persons or entities other than the Owner and the Design-Builder**

> § **3.1.6** When applicable law requires that services be performed by licensed professionals, the Design-Builder shall provide those services through qualified, licensed professionals. **The Owner understands and agrees that the services of the Design-Builder's Architect and the Design-Builder's other Consultants are performed in the sole interest of, and for the exclusive benefit of, the Design-Builder.**

Prime Contract (Doc. 1-1) at ECF pp. 23, 25 (emphasis added).

The Association does not oppose the application of these important contract provisions,[4] and thus waives its position on this issue. *See Peterson v. BASF Corp.*, 711 N.W.2d 470, 482 (Minn. 2006) ("failure to address issue in brief constitutes waiver of that issue"); *Clay v. Credit Bureau Enterprises*, 882 F. Supp. 2d 1083, 1111 (N.D. Iowa 2012), aff'd, 754 F.3d 535 (8th Cir. 2014) ("Failure to brief an issue in more than a 'perfunctory manner,' allows a court to consider the issue waived.")

Here, "state contract law governs the ability of non-signatories to enforce arbitration provisions." *Donaldson Co. v. Burroughs Diesel*, 581 F.3d 726 (8th Cir. 2009). The Prime Contract's terms are crystal clear— there are "no other contractual relationships of any kind" other than between the Association and Hayes.  (Doc. 1-1) at ECF pp. 23, 25. Thus under Minnesota law there can be no third-party beneficiaries of the Subcontract. *See ISD 281 v. Haymaker,* unpubl., 1997 WL 631521, *3 (Minn.Ct.App. Oct. 14, 1997) (finding AIA 'no contractual relationship' clause "specifically excludes the possibility of a contract between the [owner] and any subcontractor"); *Fliginger v. Opus Northwest Constr.*, unpubl., 2010 WL 4286231, *6 (Minn.Ct.App. Nov. 2, 2010) (no third party beneficiary where design-build contract "clearly envisions that [design-builder's] performance will be rendered to [Owner])."); *Town Ctr. Office Plaza v. Carlson Real Estate,* unpub., 2017 WL 1375304, at *8-9 (Minn.Ct.App. Apr. 17, 2017) (condominium association was not a third-party beneficiary of design-build contract between developer and builder); *Eleria v. City of St. Paul*, No. A10-1045, 2010 WL

---

[4] The Association states only that "the Subcontract contains no disclaimer of third-party beneficiary status" and that it is the "obvious intended recipient." Brief (Doc. 20) at p. 20.

5293742, at *6-7 (Minn.Ct.App. Dec. 28, 2010) (no intended third party beneficiary under contract's "sole and exclusive benefit" provision); *Buchman Plumbing Co. v. Regents of the Univ. of Minn.*, 215 N.W.2d 479 (Minn. 1974) (mechanical contractor not a third-party beneficiary of the contract between the owner and the general contractor where no duty owed or intent to benefit mechanical contractor).[5]

To be a third-party beneficiary, the contracting parties must intend their contract to benefit the third party at the time the contract was entered.  *Hickman v. SAFECO*, 695 N.W.2d 365, 370 (Minn. 2005).  Here, the Association contractually agreed "that the services of the Design-Builder's Architect and the Design-Builder's other Consultants are performed in the sole interest of, and for the exclusive benefit of, the Design-Builder." (Doc. 1-1) at ECF pp. 23, 25. These clear and unambiguous contract provisions control— there is no intent to benefit the Association under the Subcontract or any incorporated terms of the Prime Contract.  *See Buchman*, 215 N.W.2d at 483 (intent to benefit must be found in the contract); *Hickman*, 695 N.W.2d at 370 (intent to benefit a third person must appear from the terms of the contract); *Lester v. Basner*, 676 F. Supp. 481, 484-85

---

[5]     *See also Bedford Courts v. Concrete Structures*, 68 Misc. 3d 1224(A), 2020 WL 5638618 (N.Y. Sup. Ct. 2020) ("no contractual relationship" clause is evidence of the contracting parties' intent not to create any third party beneficiaries); *Pierce Associates v. Nemours Foundation*, 865 F.2d 530, 537 (3d Cir. 1988) (highlighting "no contractual relationship" clause to find no third-party beneficiary and stating, "In every construction subcontract the owner is the one which ultimately benefits from its performance. However, this does not create a third party beneficiary relationship); *Dick Anderson Constr. v. Monroe Constr.,* 221 P.3d 675, 686 (Mont. 2009); *Yaffe v. Scarlett Place Residential*, 205 Md.App. 429, 443 (Md.Ct. Spec. App. 2012) ("no contractual relationship" clause evidence that contracting parties did not intent to benefit non-signatory).

(S.D.N.Y. 1987) (refusing to find an obligation to arbitrate under a third-party beneficiary theory when the contract itself "is silent as to whether [its] terms" apply to the purported third-party beneficiaries).[6]

The terms of the Subcontract expressly state there is no benefit to the Association, and that the Subcontract is "the entire and integrated agreement between the parties and supersedes prior negotiations, representations or agreements, either written or oral." Prime Contract (Doc. 1-1) at ECF p 25; *Planet Productions, Inc. v. Shank*, 119 F.3d 729, 732 (8th Cir. 1997) (integration clause in contract is a "strong indication that the parties intended for the Agreement to be complete and final.") The Association is at best an incidental beneficiary with no right to enforce the Subcontract to arbitrate its claims against ONE. *See Hickman*, 695 N.W.2d at 370; *AgGrow Oils v. Nat'l Union,* 420 F.3d 751, 756 (8th Cir. 2005) ("In many (perhaps most) construction contract situations, the project owner will not be an express third-party beneficiary who may directly enforce warranties made by subcontractors or suppliers to the general contractor.")

---

[6]     *See also Nitro Distrib. v. Alticor,* 453 F.3d 995, 998 (8th Cir. 2006) (equitable estoppel inapplicable to sub-distributors who never asserted entitlement under distributor agreement and only benefitted in general from that agreement); *Interface Constr.*, No. 4:07 CV 1144, 2007 WL 2710030, *5 (finding subcontractor did not directly benefit from relationship between owner and contractor and thus could not be bound to arbitration clause in agreement between owner and contractor); *Jones v. Paradies*, 380 S.W.3d 13, 18 (Mo. App. 2012) (refusing to allow non-signatory to compel arbitration stating, "No matter how intertwined given claims are or how derivative one claim is of another, the parties must have agreed to arbitrate in order for one to compel arbitration."); *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 Fed Appx. 704, 709 (10th Cir. 2011) ("it is not enough that the contract is factually significant to the plaintiff's claims or has a 'but-for' relationship with them," rather, a contract containing an arbitration provision must "form the legal basis of those claims."); *Kroma*, 845 F.3d at 1354 (equitable estoppel cannot alter and expand arbitration clause for "disputes arising between" the parties that does not cover claims of nonsignatories).

**The AAA Rules are Inapplicable to the Association Claims Against ONE**

The Subcontract's narrow arbitration joinder provision is expressly limited only to claims between the Association and Hayes.  Subcontract (Doc. 1-1) at ECF p. 81.  In addition, under the Subcontract flow down clause, ONE assumed *toward Hayes* — not the Association — the obligations and responsibilities Hayes assumes toward the Association under the Prime Contract.  *Id.*   The Subcontract also controls over any inconsistent Prime Contract provision.  *Id.* At best, this means ONE must arbitrate Hayes' arbitration against ONE under the AAA rules.[7]

In addition to limiting arbitration joinder to only claims between the Association and Hayes, the Subcontract does not expressly incorporate the Prime Contract's arbitration agreement.  Thus its mere reference to arbitration joinder or generally referring to the Prime Contract is insufficient to bind ONE to arbitrate the Association claims against it.  *See U.S. v. Interface Constr*, No. 4:07 CV 1144, 2007 WL 2710030, *5 (E.D. Mo. Sept. 11, 2007) ("Mere reference to the prime contract or a "flow-through" clause in the subcontract, are each insufficient to bind a subcontractor to an arbitration clause contained within a prime contract.") (citing *Case Int'l Co. v. T.L James and Co,*

---

[7]         Despite this clear language, the Association tortuously claims, without legal authority, that it "succeeds to the rights" of Hayes to force arbitration of its claims on ONE. Brief (Doc. 20) at 21. The plan language of the Subcontract, however, is specific in stating ONE only *assumes toward Hayes* the obligations and responsibilities *Hayes* assumed toward the Association.  Subcontract (Doc. 1-1) at ECF p. 81; *see also Eugene Water & Elec. Bd. v. MWH Amer.* 293 Or. App. 41, 59 (Or. Ct. App. 2018) (prime contract arbitration agreement between owner and general contractor did not allow arbitration of subcontractor's dispute with owner).

907 F.2d 65, 66-67 (8th Cir.1990); *Mandaree,* 503 F.3d at 711 (mere incorporation by reference of an AIA contract, containing an arbitration clause, did not obligate bond issuer to arbitrate); *AgGrow*, 242 F.3d at 781 (finding incorporation ineffective to arbitrate as intent not clearly expressed and negated by reference to judicial resolution of disputes and by the contract provision that it "not be construed to create a contractual relationship of any kind . . . between any persons or entities other than [the owner and contractor]." – brackets in original); *CIP Constr,.* 1:18cv58, at *16  (permissive language of agreement resolution clause suggests that only the parties to the subcontract are bound by the arbitration provision") (citing  *Mandaree*, 503 F.3d at 711) ("narrower arbitration clause in the subcontract in this case reflects an intent to limit its scope to disputes 'with respect to the terms of the Agreement' that are 'between the parties'").

Under Minnesota and federal caselaw, moreover, when a party disputes the existence of an arbitration agreement a clause purporting to delegate arbitrability determination to the arbitrators is ineffective.  *See, e.g*., *New Prime. v. Oliveira* 139 S. Ct. 532, 537 (2019) (finding courts are the appropriate arbiters when "a party specifically challenges the validity of the agreement to arbitrate"); *Shockley*, 929 F.3d at 1017 (court properly determined parties did not agree to arbitrate any disputes between them nor was a contract formed to delegate this decision to an arbitrator); *Nebraska Mach.,* 762 F.3d 737, 741 (8th Cir. 2014) (court decides validity of arbitration agreement itself despite incorporation of AAA rules); *Mandaree*, F.3d at  711; *I.S. Joseph*, 803 F.2d at 399- 400 ("If there is in fact a dispute as to whether an agreement to arbitrate exists, then that issue must first be determined by the court as a prerequisite to the arbitrator's taking

jurisdiction"); *Adherent Labs*, 2018 WL 3520843, *3 (no third-party beneficiary found to compel despite contract incorporating AAA rules stating "before the AAA rules can be invoked, the district court must decide whether appellants even have a right to enforce the settlement agreement"); *Theroff v. Dollar Tree Stores, Inc.,* 591 S.W.3d 432, 442 (Mo. 2020) ("A court should determine if the contract in question falls within the coverage of the arbitration act before applying the act's severability principle, requiring a challenge to an arbitration agreement, or delegation provision, separate from a challenge to the overall contract.") (citing *NewPrime*, 139 S. Ct. at 538) ("before invoking the severability principle, a court should 'determine [ ] that the contract in question is within the coverage of the Arbitration Act."); *Holley v. Bitesquad.com LLC*, 416 F. Supp. 3d 809, 816 (E.D. Ark. 2019) ("However, even where the parties incorporate 'a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the court,' *Fallo v. High-Tech Inst.* , 559 F.3d 874, 878 (8th Cir. 2009), such as by incorporating the AAA Rules into their agreement, the Eighth Circuit Court of Appeals has explained that determining whether an arbitration agreement itself is valid is a threshold matter for the court.") (citing *Neb. Mach.*, 762 F.3d at 740-41 n.2).[8]

---

[8] *See also N&D Fashions v. DHJ Ind.*, 548 F.2d 722, 729 (8th Cir. 1976) (question of authority to enter an arbitration agreement is a decision by the courts, because it goes expressly to the making of the agreement to arbitrate."); *Minnesota TP v. Co. St. Louis*, 611 N.W.2d 355, 359 (Minn. Ct.App. 2000) ("But even if the bare existence of an agreement to arbitrate clearly exists, the district court may still decide whether the particular dispute at issue was clearly outside the scope of the clause."); *Schwalm v. TCF Nat'l Bank* , 226 F. Supp. 3d 937, 940 (D.S.D. 2016) ("[w]hether or not parties entered into an arbitration agreement falls to judicial determination" (citing Neb. Mach., 762 F.3d at 741-42 ); *Sphere Drake v. All Am. Ins*, 256 F.3d 587, 591 (7th Cir. 2001) ("as arbitration depends on a valid contract an argument that the contract does not

Here, ONE subcontracted to Hayes under a broad litigation provision and narrow joinder clause expressly limiting arbitration to claims between Hayes and the Association. ONE "should not be compelled to proceed to arbitration in order to prove that [it] never agreed to arbitrate claims in the first place." *Shockley*, 929 F.3d at 1017; *Keymer v. Mgmt. Recruiters,* 169 F.3d 501, 504 (8th Cir.1999) ("[A]rbitration is a matter of consent, not of coercion.")[9]

---

exist can't logically be resolved by the arbitrator"); *China Minmetals v. Chi Mei Corp.*, 334 F.3d 274, 288 (3d Cir.2003) ("a contract cannot give an arbitral body any power, much less the power to determine its own jurisdiction, if the parties never entered into it"); *Riley Mfg.. v. Anchor Glass*, 157 F.3d 775, 780 (10th Cir. 1998) ("no hint in the text of the clause or elsewhere in the contract that the parties expressed a specific intent to submit to an arbitrator the question whether an agreement to arbitrate exists or remained in existence after the Settlement Agreement."); *Rep. of Iraq v. BNP*, 472 F. App'x 11, 13 (2nd Cir. 2012) (finding that whether a non-signatory can enforce an arbitration agreement is for the court to determine ); *Soto v. Am. Honda Motor*, 946 F. Supp. 2d 949, 954 (N.D. Cal. Oct. 3, 2012) (same); *Upper Lakes Towing*, 2009 WL 4730762, at *4 (same); *Sandvik AB v. Advent Int'l.*, 220 F.3d 99, 105–09 (3d Cir.2000) (District Court correctly concluded it must decide whether agreement to arbitrate existed); *Three Valleys Mun. v. E.F. Hutton*, 925 F.2d 1136, 1139–42 (9th Cir. 1991) ("But "[a]rbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit.").

[9]     Cases cited by the Association, such as *Eckert/Wordell Arch. v. FJM Properties*, 756 F.3d 1098, 1099 (8th Cir. 2014), and *Fallo v. High-Tech Inst.*, 559 F.3d 874 (8th Cir. 2009), are further inapplicable to the Subcontract's narrow arbitration joinder clause for claims between the Association and Hayes. The provision in *Fallo* broadly required arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement, or breach thereof, no matter how pleaded or styled," 559 F.3d at 876, and in *Eckert* the provision expansively covered "[a]ny claim, dispute, or other matter in question arising out of or related to [the contract]," *Eckert*, 756 F.3d at 1099. This expansive language is not present here. Instead, the Subcontract expansively provides for *litigation* of any dispute between Hayes and ONE "arising out of or relating to the Subcontract or the Work." In addition, *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 797 (8th Cir. 2005), allowed a non-signatory to enforce an arbitration provision, but only where the provision referenced other third parties and the non-signatory was included within the category of third parties. These circumstances are not present here. Moreover,

**The Association's Judicial Efficiency Argument is Misplaced and Unsupported**

The Association wants this Court to reject ONE's petition (Doc. 1) and motion to dismiss (Doc, 7) by ignoring the Subcontract's broad litigation provision and narrow arbitration joinder clause to order all claims in arbitration, claiming it would "promote the efficient resolution of disputes in a single arbitration forum."   Brief (Doc. 20) at p. 15. However, "Arbitration is a matter of consent, not of coercion." *Keymer,* 169 F.3d at 504 (8th Cir. 1999).   The plain language of the Subcontract controls, not the Association's contentions.   *See Robbinsdale Publ*., 1997 WL 631521, *3 ("When evaluating the issue of arbitrability on a motion to stay arbitration, the court must ascertain the intention of the parties from the language of the arbitration agreement"); *Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d 790, 795-96 (Minn. 1995).

In addition, as stated by FirstService, the Association's property manager, in opposing arbitration joinder, "[c]ourts have consistently held that an inability to join all entities in one arbitration is not fundamentally unfair and does not prevent the arbitration from proceeding as to those parties, such as the Association and Hayes, who have agreed to arbitrate."   FirstService Brief at p. 5, Second O'Meara Aff. Ex. A (citing *KPMG LLP v. Cocchi*, 565 U.S. 18, 19, 132 S. Ct. 23, 24 (2011)). FirstService further argues that "public confidence in arbitration would be undermined if a party could be compelled to

---

as shown by the cases cited above, because ONE challenges the existence of any arbitration agreement with the Association this Court is the proper forum to determine arbitrability.   *New Prime,* 139 S. Ct. at 537 (courts are the appropriate arbiters when "a party specifically challenges the validity of the agreement to arbitrate"); *Shockley*, 929 F.3d at 1017 (same); *Nebraska Mach.,* 762 F.3d 737, 741 (8th Cir. 2014) (court decides validity of arbitration agreement itself despite incorporation of AAA rules).

arbitrate without its consent." *Id.* at p.5 (citing *Berthel Fisher & Co. Financial Services, Inc. v. Larmon*, No. 11–889 (ADM/JSM), 2011 WL 3294682, at *8 (D. Minn. Aug. 1, 2011)).[10]

The Association's attempt to avoid the clear language of the Subcontract should be rejected.

## CONCLUSION

Based on the above, Obermiller Nelson Engineering, Inc. respectfully requests an Order:

(1) Dismissing the Association's Motion to Dismiss (Doc. 19) with prejudice and on the merits;

(2) For any other relief this Court deems just and equitable.

Respectfully submitted,

Dated: April 12, 2021

**O'MEARA, LEER, WAGNER & KOHL, P.A.**

*s/ Shamus P. O'Meara*
_____
Shamus P. O'Meara (#221454)
7401 Metro Boulevard, Suite 600
Minneapolis, MN 55439-3034
(952) 831-6544
spomeara@olwklaw.com

**ATTORNEYS FOR PETITIONER OBERMILLER NELSON ENGINEERING, INC.**

---

[10] The Association's engineer, QSE, also opposed joinder, contending it as non-party that cannot be force provides similarly arguments to avoid arbitration. QSE Brief at. p. 2-3, Sec. O'Meara Dec. Ex B.