IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Obermiller Nelson Engineering, Inc., a North Dakota corporation,<br><br>                                              Petitioner,<br><br>vs.<br><br>River Towers Association, a Minnesota Nonprofit corporation, and Langston Pearson Enterprises, Inc. d/b/a Hayes Automation, a Minnesota Corporation<br><br>                                              Respondents. | Court File No.: 21-cv-463 (JRT/TNL)<br><br>**PETITIONER OBERMILLER NELSON ENGINEERING, INC.'S SURREPLY IN OPPOSITION TO RIVER TOWERS ASSOCIATION'S MOTION TO DISMISS [DOC. 19]** |

## **INTRODUCTION**

Respondent River Towers Association's (Association) arguments fail to overcome two undisputed facts:

1. There is no arbitration agreement between the Association and ONE. *See* Doc. 1-1, at ECF pp. 22, §1.3 (River Towers-Hayes Agreement, to which ONE is not a party).

    and

2. The Association's arbitration claims against ONE are not within the scope of the arbitration agreement between Respondent Hayes and ONE. *See* Doc. 1-1, at ECF pp. 78, RESPONSIBILITIES OF SUBCONTRACTOR (Hayes-ONE Subcontract).

Because there is no arbitration agreement, much less an agreement delegating an arbitrability determination to an arbitrator, the question of arbitrability is for this Court to decide, not the arbitrator. *McLaughlin Gormley v. Terminix*, 105 F.3d 1192, 1194 (8th Cir. 1997); *see also AgGrow Oils v. Nat'l Union Fire Ins.*, 242 F.3d 777, 780 (8th Cir. 2001).

The Association's Motion to Dismiss [19] should be denied.

## **ISSUES**

As discussed during the April 23, 2021, status conference, the Court ordered all issues in this action to be addressed through the Association's Motion. These issues include the relief sought in ONE's Motion [Doc. 7]:

(1) Dismissing the Association's Demand for Arbitration against ONE with prejudice and on the merits;
(2) Alternatively, staying the Association's Demand pending this Court's determination of all issues involving arbitrability of the Association's claims against ONE;
(3) Alternatively, if the Court determines the Association may pursue its direct claims against ONE, ruling that Minn. Stat. § 541.051 bars any claims by the Association predicated on an "existing stainless steel boiler flue piping" condition expressly accepted by the Association in the Prime Contract.
(4) Alternatively, if the Court denies ONE's Petition, staying this matter pending the adjudication of all claims in the arbitration matter.
(5) For such other and further relief as the Court deems just and equitable.

ONE Motion [Doc. 7], at pp. 1-2.

In support of these issues, ONE relies upon its briefing and letter submission. *See* Opening Brief [Doc. 9], ONE Reply Brief [Doc. 29], ONE Response Memo. [Doc. 30], Letter [Doc. 28], and this submission. ONE's initiation of this action and pursuit of relief by motion is a proper and appropriate procedure recognized by federal courts. *See, e.g., Wells Enterprises, Inc. v. Olympic Ice Cream,* 903 F. Supp. 2d 740, 751 (N.D. Iowa 2012) (discussing different methods to obtain stay of arbitration, including by motion pursuant under the Court's inherent power, section 4 of the Federal Arbitration Act, and state law).[1]

---

[1] ONE's Petition [Doc. 1] and Motion [Doc. 7] collectively rely upon the Rules of Civil Procedure, the Federal Arbitration Act, the Federal Declaratory Judgments Act, the Minnesota Uniform Arbitration Act, and applicable law. *See* Petition [Doc. 1], at ¶1; Opening Brief [Doc. 9], at p. 6.

2

The Association does not identify the rule, statute or other authority upon which its Motion is based, or the standard of analysis the Court should apply. *See generally* Assn Brief [Doc. 34]. Because the Associations seeks an order, in effect, to compel arbitration, the appropriate analysis is "(1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the specific dispute is within the scope of that agreement." *Benchmark Ins. Co. v. SUNZ Ins. Co.*, No. 20-908 (JRT/TNL), 2021 WL 698730, at *4 (D. Minn. Feb. 23, 2021) (Tunheim, J.). Importantly, the Association bears the burden to establish entitlement to the relief it seeks: "The party seeking to compel arbitration 'must demonstrate that a valid agreement to arbitrate exists.' " *Pederson v. Donald J. Trump for President, Inc.*, 465 F. Supp. 3d 929, 936 (D. Minn. 2020) (Tunheim, J.).

Because there is no agreement permitting the Association to pursue direct arbitration claims against ONE, the Association has failed to sustain its burden and its motion must be denied.

## ARGUMENT

**I.  Without an Agreement to Arbitrate, the Association Has No Right to Arbitrate Direct Claims Against ONE.**

Without citation to any authority – legal or contractual - the Association contends that its direct arbitration claims against ONE may proceed solely because Hayes may assert arbitration claims against ONE, labeling ONE's objection to its direct claims as unusual and textually unsupported. *See* Assn Brief [34], at pp. 2-3. The Association is mistaken. Under long-standing, black letter law, arbitration is recognized "as a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to

3

arbitration." *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). In failing to recognize this established principle of contract law, it is the Association's argument that is unusual and unsupported. This Court should reject the Association's motion, which seeks to force ONE to arbitrate non-arbitrable claims.

Further, and not unexpectedly, the Association fails to cite any authority for the novel proposition that ONE must defend the Association's arbitration claims simply because Hayes may assert cross-claims against ONE in the arbitration. As this Court recently observed under similar circumstances where one party seeks arbitration, the Court's initial inquiry is "whether the parties have agreed to submit their particular grievance to arbitration." *Benchmark Ins. Co. v. SUNZ Ins. Co.*, No. 20-908 (JRT/TNL), 2021 WL 698730, at *4 (D. Minn. Feb. 23, 2021) (Tunheim, J.) (denying motion to compel arbitration) (*appeal filed* Mar. 24, 2021). And, importantly, as noted above, the burden is on the Association: "The party seeking to compel arbitration must demonstrate that a valid agreement to arbitrate exists." *Id*. (internal citations and quotations omitted). Sifting through the Association's brief compels a single conclusion: the Association has failed to satisfy its burden of demonstrating an obligation to arbitrate its direct claims against ONE because there is no agreement requiring ONE to arbitrate those particular claims.

The Association also misconstrues ONE's reference to *Robbinsdale Public Schools (ISD 281) v. Haymaker Construction*, unpubl., 1997 WL 631521 (Minn. Ct. App. Oct. 14, 1997). *Robbinsdale* is instructive for the structure of its analysis, which informs courts to "ascertain the intention of the parties from the language of the arbitration agreement," in

4

determining whether the parties expressed an intent to arbitrate a particular controversy. *Id*., at *2-3. ONE relies upon *Robbinsdale* for this long-standing principle of contract interpretation involving arbitrability disputes. *See* ONE's Opening Brief [9], at p. 15; ONE's Reply [29], at p. 3. This Court undertook that same analysis in *Benchmark*, when it denied two motions to compel arbitration after applying the Eighth Circuit's analytical framework requiring a determination of whether a valid arbitration agreement existed and whether the specific dispute was within the scope of that agreement. *Benchmark*, at *4. The Association's mistake is its attempt to focus on the outcome in *Robbinsdale* instead of the analysis applied by the Court to reach the outcome. *See* Association Brief [34], at p. 5.

The Association also misses the mark in its criticism of the *United Steelworkers* and *Orbital ATK* cases. First, the Association's argument incorrectly suggests that ONE has the burden in these proceedings. Association Brief [34], at pp. 5-6. In fact, as noted, it is the Association that "must demonstrate a valid agreement to arbitrate exists." *Benchmark*, at *4; *Pederson*, at 936. In the instant case, the Association must establish that ONE – despite no agreement to arbitrate the Association's direct claims – must nevertheless submit to an arbitration of such claims that ONE did not bargain for, did not contractually agree to arbitrate, and to which it has continually objected both in the arbitration proceeding and through this action.

Additionally, *United Steelworkers* provides important guidance for the Court because it illustrates concepts of narrow and broad arbitration provisions, which are relevant to this case. *Id*., at 788-89. Here, the arbitration provision of the Hayes-ONE Subcontract is narrow, and under *United Steelworkers*, does not permit arbitration of the

5

collateral dispute of the Association's alleged claims against ONE.  *See also Kroma v. Boldface Licensing*, 845 F.3d 1351, 1354 (11th Cir. 2017) (equitable estoppel cannot alter and expand arbitration clause for "disputes arising between" the parties that does not cover claims of nonsignatories).  Similarly, in *Orbital ATK,* the Court rejected an attempt by one party to compel arbitration of claims falling outside of an arbitration agreement.  *Orbital ATK, Inc. v. Heckler v. Koch*, 2017 WL 3995538 (D. Minn. Sept. 8, 2017) (stating, at *3, "when a complaint contains both arbitrable and nonarbitrable claims a court must compel the arbitration of arbitrable claims, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." (internal quotations and citations omitted)).

## II.     Basic Principles of Contract Law Require Dismissal of the Association's Direct Arbitration Claims.

The Association contends that principles of contract law permit its direct arbitration claims against ONE.  Again, the Association is mistaken.  First, the Association relies upon the Hayes-ONE Subcontract in an attempt to justify its direct arbitration claims.  *See* Assn Brief [34], at pp. 3-4.  The Association, however, is not a party to the Subcontract, and has no right to enforce its terms.  *Ahlgren v. Muller*, 438 F. Supp. 3d 981, 990 (D. Minn. 2020) (Tunheim, J.) ("under Minnesota law, strangers to a contract acquire no rights under the contract.").

Second, the Association is not a third party beneficiary.  ONE incorporates its discussion in its opening brief establishing the Association's failure to establish third party beneficiary status.  *See* ONE Opening Brief [9], at pp. 14-18.  In sum, despite the

Association's arguments, both the Prime Contract *and* the terms of the Subcontract reject third party beneficiary status to the Association. *Id*., at pp. 15-17. The Subcontract states that ONE only assumes *toward Hayes* — not the Association — all of the obligations and responsibilities Hayes assumes toward the Association under the Prime Contract. Subcontract (Doc. 1-1) at ECF p. 78. *See Louis Degidio, Inc. v. Indus. Combustion, LLC*, No. CV 19-2690 (JRT/ECW), 2020 WL 4676289, at *2 (D. Minn. Aug. 12, 2020) (Tunheim, J.) ("Courts looks to the contract terms or surrounding circumstances to determine intent, including when the third party is referenced by name or category."); *see also* ONE Brief in Opp. [Doc. 30], at 13 (citing Prime Contract § 1.4.2 — "The Design-Build Documents shall not be construed to create a contractual relationship of any kind between any persons or entities other than the Owner and the Design-Builder"); *ISD 281 v. Haymaker,* unpubl., 1997 WL 631521, *3 (Minn.Ct.App. Oct. 14, 1997) (finding AIA 'no contractual relationship' clause "specifically excludes the possibility of a contract between the [owner] and any subcontractor");[2] *Fliginger v. Opus Northwest Constr*., unpubl., 2010 WL 4286231, *6 (Minn.Ct.App. Nov. 2, 2010) (no third party beneficiary where design-build contract "clearly envisions that [design-builder's] performance will be rendered to [Owner]");[3] *Town Ctr. Office Plaza v. Carlson Real Estate,* unpub., 2017 WL

---

[2] Cited in ONE Opening Brief [Doc. 9], at pp. 15, 17; ONE Opp. Memo. [Doc 30], at pp. 7, 14.

[3] Cited in ONE Opening Brief [Doc. 9], at p. 17; ONE Opp. Memo. [Doc 30], at p. 14.

1375304, at *8-9 (Minn.Ct.App. Apr. 17, 2017) (condominium association was not a third-party beneficiary of design-build contract between developer and builder).[4]

In opposition, the Association again caviled ONE's citations, selectively focusing on cases it incorrectly perceives as favoring its position. For example, in *Pierce Assoc. v. Nemours Fd.*, 865 F.2d 530, 536 (3rd. Cir. 1988), the Association argues that certain language common to both the general contract and subcontract resulted in the rejection of third party beneficiary status, but the Court also cited language limited to the general contract, which the Court observed was "of course evidence of [the general contractor]'s intent." *Id*., at 537. This approach is consistent with this Court's observation in *Degidio* that review of the surrounding circumstances is appropriate in the determination of third party beneficiary status. *Degidio*, at *2. The terms of the Prime Contract, thus, are very relevant in this Court's review of the Association's claimed third party beneficiary status. To be sure, the Association, in the Prime Contract, rejected third party beneficiary status, yet when arguably convenient, eschews the terms of the Prime Contract. They cannot have it both ways.

Third, the plain language of the Subcontract does not support the Association's position. In very clear, narrow terms, the Subcontract states *only* that ONE, if requested by Hayes, shall join an arbitration "*between [the Association] and Hayes*" that involves ONE's work or its acts or omissions. ECF Doc. 1-1, at p. 78; This limited arbitration clause permits ONE's joinder only as to claims between the Association and Hayes;

---

[4] Cited in ONE Opening Brief [Doc. 9], at p. 17; ONE Opp. Memo. [Doc 30], at p. 14.

nowhere does the language permit, nor can it be reasonably interpreted to mean, that the Association may assert direct claims against ONE.⁵ *See e.g., M. A. Mortenson v. Saunders Concrete Company*, 2011 WL 2672248, at *7 (D. Minn. Jul. 8, 2011) (Frank, J.) ("The arbitration agreement between Mortenson and Saunders, while incorporated in the Bond between Mortenson and Hartford, by its own terms only governs 'any dispute arising between Mortenson and [Saunders] under the [Subcontract].' The dispute between Mortenson and Hartford arising under the Bond is thus beyond the scope of the arbitration agreement.").⁶

The Subcontract's dispute resolution provision [Doc. 1-1, at p. 78] functions as follows:

| <u>**LITIGATION REQUIRED**</u>: | <u>**ARBITRATION REQUIRED ONLY**</u>: |
|---|---|
| 1. For any dispute between Hayes and ONE:<br>   ○ Arising out of or relating to the Subcontract or the Work<br><br>or<br><br>2. For any direct claims by the Association against ONE. | • If Hayes requests ONE join an arbitration proceeding:<br>   ○ ***involving claims between the Association and Hayes***;<br>   and<br>   ○ involving an act or omission of ONE or any Work required to be performed by ONE under the Subcontract |

---

⁵ Any argument that the Subcontract incorporates the arbitration provision of the Prime Contract is incorrect. The Subcontract does not expressly incorporate the Prime Contract's arbitration agreement. Reference to a 'flow-through' clause in a subcontract is insufficient to bind a subcontractor to an arbitration clause contained in a prime contract. *See* ONE Reply Brief [Doc. 29], p. 6, n.3.

⁶ Cited in ONE Opening Brief [Doc. 9], at p. 17; ONE Opp. Memo. [Doc 30], at p. 14.

The Association is not Hayes, nor are the Association's claims against ONE "between Owner and Hayes" as required to join ONE in an arbitration under the Subcontract. *Id*. Thus under the Subcontract's clear language there is no arbitration clause or agreement allowing the Association to assert direct arbitration claims against ONE.

## CONCLUSION

ONE respectfully requests an Order:

*As to the Association's Motion [Doc. 19]*:
(1) Denying the Association's Motion [Doc. 19].

*As to the issues presented in ONE's Motion [Doc. 7]*:
(2) Dismissing the Association's Demand for Arbitration against ONE with prejudice and on the merits;

(3) Alternatively, staying the Association's Demand pending this Court's determination of all issues involving arbitrability of the Association's claims against ONE;

(3) Alternatively, if the Court determines the Association may pursue its direct claims against ONE, ruling that Minn. Stat. § 541.051 bars any claims by the Association predicated on an "existing stainless steel boiler flue piping" condition expressly accepted by the Association in the Prime Contract.

(4) Alternatively, if the Court denies ONE's Petition, staying this matter pending the adjudication of all claims in the arbitration matter.

Respectfully submitted,

Dated: May 7, 2021　　　　　　　　**O'MEARA, LEER, WAGNER & KOHL, P.A.**

　　　　　　　　　　　　　　　　*s/ Shamus P. O'Meara*
　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　Shamus P. O'Meara (#221454)
　　　　　　　　　　　　　　　　7401 Metro Boulevard, Suite 600
　　　　　　　　　　　　　　　　Minneapolis, MN 55439-3034
　　　　　　　　　　　　　　　　(952) 831-6544

spomeara@olwklaw.com

**ATTORNEYS FOR PETITIONER OBERMILLER NELSON ENGINEERING, INC.**